333 P.2d 607

William P. KEARNS, Jr., Chief of the Division of Liquor Control, Appellant,

v.

Juan P. ARAGON, d/b/a Juan's Beer Garden, Appellee.

No. 6450.

Supreme Court of New Mexico.

Dec. 15, 1958.

Rehearing Denied Jan. 16, 1959.

Charles B. Barker, Santa Fe, for appellant.

Chavez & Cowper, Belen, for appellee.

COMPTON, Justice.

This appeal is taken by the Chief of Liquor Control, hereinafter referred to as the *Chief,* from the order of the District Court of Santa Fe County setting aside his order revoking appellee's liquor license.

Appellee, the holder of dispenser's license No. 199 authorizing him to operate a bar in Valencia County, New Mexico, was charged with making a sale of intoxicating liquor on Sunday in violation of Section 46-10-14, NMSA, 1953 Compilation.

At a hearing upon the complaint before the Chief, Eddleman, a state police officer, testified that appellee sold him a bottle of whiskey on Sunday, April 14, 1957. This testimony was partially corroborated by Daves, another state police officer. Appellee flatly denied making any such sale. In addition, appellee moved for dismissal on the ground that he had been entrapped into committing the offense. This motion was denied by the Chief.

The Chief found that appellee had made the illegal sale as charged, and pursuant to the authority vested in him by Section 46-6-2(g), NMSA, 1953 Compilation, revoked his license.

Appellee appealed the order of the Chief to the district court for Santa Fe County and the case was tried solely on the record made in the proceeding before the Chief. The district court reversed the decision of the Chief finding that the action of the state police in bringing about the alleged sale constituted entrapment.

The court also concluded that the action of the Chief was arbitrary, capricious and unreasonable.

Upon review, this court must determine whether the order or findings of the Chief were sustained by substantial, com-

petent, relevant and credible evidence. Section 46–6–6, NMSA, 1953 Compilation. See Gonzales v. New Mexico State Board of Embalmers and Funeral Directors, 63 N.M. 13, 312 P.2d 541.

■ We believe the order of the Chief was so supported. A portion of Officer Eddleman's testimony was as follows:

"We drove up to the establishment of Juan's Beer Garden between the house and the bar. We got out of our car. At this time we noticed Juan and his wife and a little boy coming out of the bar. We approached them and went inside the bar and stopped right at the edge of the bar and asked if there would be any chance of buying any liquor. He then stated that it was Sunday and there would be no chance. We started out the door. He stated if one of you come later there might be a chance, so we got in our car and left. We fooled around town for a little while and then we went back at approximately 7 P.M. where at this time I left Officer Daves off about a half block from Juan's Beer Garden on the road. I approached the house. The house was dark and also the bar. I parked the car in the same place between the house and the bar and got out and knocked on the rear door of the house. Juan can to the door and I asked if there would be any chance of buying any liquor then. He stepped out of the door and on the steps and observed my car and he then stated, 'You can buy some any time if you are by yourself.' So we went over to the bar. He unlocked the door and we went inside. He asked what kind I liked and how much and I said I would like to have a half-pint of Schenley's. He looked over the stock and told me he didn't have any Schenley's in stock and if H and H would be sufficient. I said it would. He gave me the bottle; I gave him a five dollar bill. He gave me back three dollars and a quarter. I then walked to the door, opened the door and stood right in front of the door holding the bottle in front of me where Officer Daves could see it, making conversation with Juan, Mr. Aragon. At this time he said he had to be very careful because there had been other raids from State Police and at this time I informed, I showed him my credentials and informed him I was a New Mexico State Police and that 'You are under arrest' and he said 'That's all right,' he said, 'It's your word against mine.' I then said that Officer Daves was present and he then stated that he had to go into the house. I told him to get in the car and he proceeded on in the house. I followed him in the first door and then turned around and came back out. At this time Officer Daves was there and I told him to go to the front

door. I stood at the rear door. I moved my car from behind the house around to the north side of the house. I stood by the rear door. I heard, I don't know exactly what it was, it seemed like some drawers moving in the bedroom. I heard a screen open and about a minute later Officer Daves came around and told me the man had a gun sticking out the window. We then proceeded to get in my car and go over to the Town of Belen and phone Officer Stringfellow of the State Police. We then went to a Justice of the Peace and filed a complaint for illegal sale of liquor and resisting arrest, pending by Sergeant Vigil and Captain Bradford. We then called Sergeant Vigil at Albuquerque."

Appellee makes much of the fact that the court reporter and perhaps others, first understood Witness Eddleman to say that the whiskey he purchased was H & H, while the bottle placed in evidence was Ancient Age. The witness explained on cross-examination that he had said Ancient Age. We attach no particular significance to this point in view of the fact that when H and H and Ancient Age are spoken it is somewhat difficult for the ear to distinguish between the two terms.

Officer Daves testified in part as follows:

" * * * He (appellee) stated for us to go on but if one of us come back, that he would sell us some whiskey, some liquor. We left then and drove around town and observed other bars until around 7 P.M., and I guess. We then went back to Juan's Beer Garden and I got out around a half a block to a block from the bar and Officer Eddleman drove his car on up into the yard there and after I got out, I started walking toward the bar. It wasn't dark yet, but it was kind of hazy, and when I got—I saw—I did see Officer Eddleman and Mr. Aragon go into the bar and I kept on walking toward the bar and when they come out shortly, they stood there at the door for a few seconds, I don't know how long, and all of this time I was walking toward them and while they were standing there I saw a bottle in Officer Eddleman's hand that he was holding up in front of him. * * * "

The Chief who heard the testimony and had an opportunity to observe the demeanor of the witnesses, stated as follows in his order.

"that the testimony of the State's witness instant violation was very convincing. * * * "

After reviewing the testimony taken in the proceedings before the Chief we are of the opinion that the order was supported by substantial, competent, relevant and credible evidence. Even assuming that the action of the State police officers constituted entrapment, this fact alone does not

render their testimony unsubstantial, incompetent, irrevelant or incredible. As we held in State v. Romero, 49 N.M. 129, 133, 158 P.2d 851, the mere circumstance, standing alone, that the State's witnesses were engaged in a species of entrapment does not render their testimony unworthy of belief. See In re Wellcome, 23 Mont. 450, 59 P. 445.

The Chief contends that since the appellee took the stand and denied under oath that he had made the alleged Sunday sale, he is precluded from raising the defense of entrapment. Appellee of course urges to the contrary. We have found well reasoned cases supporting both views, but as will be seen it is unnecessary to decide this point.

■ A proceeding before the Chief to revoke a liquor license is not a criminal proceeding; rather it is an administrative proceeding in the nature of a civil action. Bradley v. Texas Liquor Control Board, Tex.Civ.App., 108 S.W.2d 300; Commonwealth v. Lyons, 142 Pa.Super. 54, 15 A.2d 851; Kravis v. Hock, 137 N.J.L. 252, 59 A. 2d 657. This is true even though the charge and ground for revocation is the violation of a penal statute. Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S.W.2d 821; Boyd v. Allen, 246 N.C. 150, 97 S.E.2d 864.

Section 46-6-4(m), NMSA, 1953 Compilation, makes this quite clear in providing that no admission of guilt, admission against interest or transcript of testimony taken in hearings before the Chief is admissible in a criminal prosecution against a licensee.

■ Nor is the object of an administrative proceeding to revoke a liquor license intended as a punishment of the licensee. The purpose is to insure so far as possible the decent and orderly conduct of a business affecting the public health, morals, safety and welfare. Flowers v. Benton County Beer Board, Tenn. 302 S.W.2d 335; Cornell v. Reilly, 127 Cal.App.2d 178, 273 P.2d 572. State control of the liquor business under the police power is so great as to range from complete prohibition to lesser degrees of regulation and constant surveillance. Boyd v. Allen, 246 N.C. 150, 97 S.E.2d 864. See Floeck v. Bureau of Revenue, 44 N.M. 194, 100 P.2d 225.

■ Hence, revocation proceedings are not governed by the rules of law applicable to criminal prosecutions. In such proceedings the offense need not be established beyond a reasonable doubt. Pennsylvania Liquor Control Board v. Summit Hill Rod and Gun Club, 184 Pa.Super. 584, 135 A.2d 781; Kravis v. Hock, 137 N.J.L. 252, 59 A.2d 657. The constitutional defenses of unreasonable search and seizure and self-incrimination are not available in similar proceedings. Camden County Beverage Co. v. Blair, D.C., 46 F.2d 648. In liquor license revocation proceedings proof of gen-

eral reputation is not treated as substantive evidence to air in determining guilt or innocence. Commonwealth v. Lyons, supra. Likewise, and decisive for purposes of this case, entrapment is not a defense in an administrative proceeding to revoke a liquor license. In a civil proceeding for the forfeiture of contraband liquor, the Missouri court held that the defense of entrapment was not available since the "defendant is not being tried here for a criminal offense." State v. Ward, 361 Mo. 1236, 239 S.W.2d 313, 320.

■ Our decision goes no further than to hold that the defense of entrapment is not available in a proceeding to revoke a liquor license. Nonetheless, we wish to point out that many courts have gone considerably further in restricting the defense of entrapment. In some jurisdictions, notably Tennessee and New York, the defense of entrapment is not recognized in *any* criminal action. Goins v. State, 192 Tenn. 32, 237 S.W.2d 8; People On Complaint of Klein v. Schacher, Mag.Ct., 47 N.Y.S.2d 371.

In a number of jurisdictions the defense of entrapment has no application in *criminal prosecutions* for violating liquor laws. The rationale of these decisions is that to constitute entrapment the criminal intent must originate in the mind of the entrapper, and since no intent is necessary to violate liquor laws, an essential element of entrapment is absent. French v. State, 149 Miss.

684, 115 So. 705; State v. Driscoll, 119 Kan. 473, 239 P. 1105; State v. Merklinger, 180 Kan. 283, 303 P.2d 152; State v. Varnon, Mo., 174 S.W.2d 146; State v. Sheeler, 320 Mo. 173, 7 S.W.2d 340.

In the case of State v. Broaddus, 315 Mo. 1279, 289 S.W. 792, 795, the court stated this principle as follows:

"Whatever may be the general rule in regard to the effect upon the right to convict a defendant who has been entrapped into the commission of a crime (18 A.L.R. 146, 149), it is usually held to have no application to cases involving the sale of intoxicating liquors or other violations of the Prohibition Laws. In this class of cases criminal intent is not, as a rule, a necessary element and need not be shown."

In a similar vein is the following statement by the Virginia court in Bauer v. Commonwealth, 135 Va. 463, 115 S.E. 514, 515:

"But whatever may be said against enticing one to commit crime, the decided weight of authority is that one who makes an unlawful sale of liquor, or unlawfully transports it, is not excused from criminality by the fact that he was induced to do the criminal act for the sole purpose of prosecuting him for it. Initiative on the part of the perpetrator of an offense of this nature is not essential to charge him with criminal responsibility."

In view of what has been said above, the judgment of the district court must be reversed and the cause remanded with a direction to set aside its judgment and enter another affirming the order of the Chief.

It is so ordered.

McGHEE and SHILLINGLAW, JJ., concur.

LUJAN, C. J., and SADLER, J., not participating.