In the Matter of 245 ELMWOOD AVENUE, INC., Petitioner, *v.* NEW YORK STATE LIQUOR AUTHORITY, Respondent.

Fourth Department, November 30, 1961.

*Kavinoky, Cook, Hepp & Sandler* (*Wayne D. Wisbaum* of counsel), for petitioner.

*Richard R. Jenczka, Hyman Amsel* and *John J. O'Hare* for respondent.

WILLIAMS, P. J. In this article 78 proceeding the petitioner requests a review of a determination of the State Liquor Authority (hereinafter called "Authority") which suspended its hotel liquor license for a period of 10 days.

The charge against the petitioner was selling alcoholic beverages to a minor under the age of 18 years. This was contested by the petitioner and a hearing was held.

The only witness for the Authority was the minor herself. She testified as to her age (17 years, 10 months at time of sale) and that she had been sold an alcoholic beverage at the time in question. It developed that she was a girl of very doubtful moral character. Her testimony was questionable at best.

When she was called, she refused to be sworn and said that she did not care to testify against anybody. She said, "you put me back in jail for two weeks and I'm not saying anything." There was quite a colloquy between the Hearing Commissioner and the proposed witness, after which an adjournment of some 30 to 50 minutes was taken. After the adjournment, the formerly very reluctant witness was sworn without protest and testified freely. She explained that her previous reluctance was because she was angry at the Authority because its counsel had gone into court "Last Tuesday" and had her stay in the Erie County Jail for two more weeks. It appeared that she was going back to jail after the hearing. She was under charge as a wayward minor.

On cross-examination she was asked if she had talked with anyone during the adjournment and at first she said that she had not. She then said that the attorney for the Authority told her that "if I didn't testify they would have to call the Liquor Board." "Q. Did they call somebody? A. They did and if I didn't testify they would keep me in jail and tell the Judge — That I would have to go back to jail. They said that the Judge could make me testify or if he wanted to, make me stay in jail."

It developed during her testimony that she left "grammar school" when she was a sophomore because she became pregnant. She was married later and lived with her husband a very short time. She was a resident of Pennsylvania and came to Buffalo with one Hungate, who was with her at petitioner's restaurant at the time of the alleged violation. They stayed at the petitioner's hotel overnight but were registered in separate

rooms. While she was in Buffalo and before she was put in jail, her bills were paid by male friends whom she met.

Hungate, her companion at the time in question, testified that no alcoholic drink had been served to her. There was no other evidence on this question; thus the determination of the Authority was based solely on her testimony which, as we have indicated, was sharply disputed. Hence her credibility and the believability of her testimony were highly important to the Hearing Commissioner and the Authority in considering and determining the controverted questions of fact involved. Nevertheless, when the petitioner's attorney sought to question her as to matters that might involve her moral character the Authority's counsel objected to " that type of questioning." The Hearing Commissioner ruled: " Sustained. Her character is not involved here; not degrading her." The petitioner's attorney observed that the examination was sought on the question of credibility but he was not allowed to proceed.

We shall pass the question of whether her testimony was or was not coerced. The record indicates that it might have been. But even if it was not, the circumstances were questionable and her testimony is far from convincing. However, we may not pass on the weight of the evidence, for if there is substantial evidence to support the determination it must be allowed to stand unless the determination was arbitrary or capricious (*Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel,* 304 N. Y. 65, 70, 71; *Matter of Burke* v. *Bromberger,* 300 N. Y. 248, 250). We cannot say that there was not substantial evidence.

Nevertheless in any case, particularly one as close as this factually, a fair hearing is of the utmost importance (*Matter of Hecht* v. *Monaghan,* 307 N. Y. 461; *Matter of Weekes* v. *O'Connell,* 304 N. Y. 259; *Matter of O'Dea's Bar & Restaurant* v. *New York State Liq. Auth.,* 30 Misc 2d 395). If the Authority is to decide questions of fact, the ordinary rules relating to the credibility of witnesses must be observed. The elicitation of facts concerning the moral character of a witness is always important and frequently revealing and should not be circumscribed unduly (*People* v. *Sorge,* 301 N. Y. 198).

This court, in discussing certain general principles relating to administrative hearings, in *Matter of Yates* v. *Mulrooney* (245 App. Div. 146), observed that the practice is somewhat informal and that strict rules of evidence are not rigidly enforced. But it was stated (p. 149) : " The licensee is protected in his right to retain his license unless it be ascertained upon a hearing that good cause exists for its revocation. He must be confronted with the witness, and *be given an opportunity to*

*cross-examine his accusers.* Otherwise he has not had a fair hearing.'' (Italics added.)

This quotation was cited with approval in *Matter of Brenner* v. *Bruckman* (253 App. Div. 607, 609).

The Authority seeks to excuse the limitations on the cross-examination under authority of *Third Great Western Turnpike Rd.* v. *Loomis* (32 N. Y. 127) and *People* v. *Slover* (232 N. Y. 264). These cases stand for the principle that the exclusion of certain testimony concerning former improper or immoral acts rests in the discretion of the Trial Judge, and the *Third Great Western* case holds that such rulings may not be disturbed on appeal except in the case of a manifest abuse of discretion. In the present case it appears that if the Hearing Commissioner had based his ruling on discretion it would have been an abuse. However, when he remarked that her character was not involved it is obvious that his ruling was not founded on discretion, but on a misconception of the laws of evidence and credibility.

The Hearing Commissioner made the original findings of fact, which were adopted by the Authority. Having approached the matter on the theory that the character and credibility of the witness were not involved or to be considered, his findings are based on a false premise as to the duties and responsibilities of the Authority in weighing and considering the evidence before rendering a factual determination. This misconception undoubtedly carried through to, and affected, the Authority's adoption of his findings.

For an interesting and instructive discussion of issues of credibility before an administrative board, see Jaffe, Judicial Review: Question of Fact (69 Harv. L. Rev. [1955–1956], p. 1020, and particularly pp. 1031–1038).

Because the petitioner did not receive a fair hearing and because of the errors of law that we have mentioned, the determination of the Authority should be annulled and the proceedings remitted for a new hearing.

All concur, except BASTOW, J., who dissents and votes to confirm the determination.

Present — WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and HENRY, JJ.

Determination annulled on the law, without costs and matter remitted to the State Liquor Authority for further proceedings in accordance with the opinion.