[No. 38084.     Department Two.     September 29, 1966.]

JOW SIN QUAN et al., *Appellants,* v. WASHINGTON STATE LIQUOR CONTROL BOARD et al., *Respondents.**

*Reported in 418 P.2d 424.

*Carkeek, Harris, Harris, Myers & Vertrees,* by *John C. Vertrees,* for appellants.

*The Attorney General, Paul D. Solomon* and *Arthur Mickey, Assistants,* for respondents.

HAMILTON, J.—In October, 1962, Mr. Jow Sin Quan and his wife, Sec Lun Quan, owned and operated a neighborhood grocery store, known as Roy's Grocery, in Seattle, Washington. As proprietor, Jow Sin Quan was the holder of a Class E-F liquor license, issued by the Washington State Liquor Control Board, hereafter referred to as the board, which authorized the sale of certain alcoholic beverages from the grocery store. On three Sundays, October 21, 28, and November 4, 1962, an agent of the board pur-

portedly made purchases of beer on the premises from Mrs. Quan, then in attendance upon the store. On November 4th, Mrs. Quan was arrested and subsequently charged in justice of the peace court with three violations of RCW 9.76.010, which makes it a misdemeanor to sell alcoholic beverages on Sunday. Trial was had and she was convicted. She appealed to the superior court. A jury trial was demanded. The prosecuting attorney dismissed the charges pertaining to November 4, and on February 5, 1963, Mrs. Quan was, following trial, acquitted of the charges relating to October 21 and 28.

In the meantime, and on November 29, 1962, a complaint alleging the purported Sunday sales of October 21, 28, and November 4, was filed with the board charging Jow Sin Quan, as the licensee with violation of RCW 9.76.010 and § 20 of the revised rules and regulations of the board (WAC 314-16-050).[1] This action was pursued under the board's administrative powers, and had for its purpose the determination of whether the license issued in the name of Jow Sin Quan should be continued in effect. The complaint and timely notice of hearing thereon was served upon Mr. Quan.

Following several continuances, notices of which were served upon Mr. Quan, the board commenced its administrative hearing of the complaint on June 28, 1963. This hearing was presided over by the board's chief examiner, and attended by a court reporter. The complaint was prosecuted by an assistant attorney general, and the licensee appeared and was represented by his retained attorney. Each side was permitted to present its witnesses and exhibits, voice objections, take exceptions to rulings, make offers of proof, and to cross-examine opposing witnesses. A complete record of the proceeding was transcribed by the court reporter and certified by the chief examiner.

---

[1] "No retail licensee shall sell, deliver, offer for sale, serve or allow to be consumed upon the licensed premises any liquor, nor permit the removal of any liquor from the licensed premises in any manner whatsoever, . . . between the hours of twelve o'clock midnight on Saturday and six o'clock a.m. on the following Monday, . . . ." WAC 314-16-050.

In essence, the evidence presented in support of the complaint consisted of the testimony of the investigator who assertedly made the purchases of beer on the dates in question, together with the testimony of other officers who variously corroborated each purchase. The beer purportedly purchased (two "six packs" of Olympia "stubbies" and one "six pack" of Olympia "cans," each carton minus one bottle or can which had been removed for analysis) was identified, offered, and admitted in evidence. In addition, two one-dollar bills, were introduced. The officers testified that the serial numbers on these bills had been noted immediately prior to the November 4 purchase and that immediately thereafter the bills were found in the store's cash drawer.

In response, the Quans' evidence consisted of the testimony of Mr. and Mrs. Quan and two witnesses, one a former employee and the other a tenant of the Quans, who variously corroborated Mrs. Quan's version of events. The Quans' testimony, coupled with that of the other witnesses, basically amounted to a denial of and/or participation in the asserted sales.

At the conclusion of the hearing provision was made for the submission of written and oral arguments by counsel. After reviewing the record of the proceedings and the written arguments, and hearing the oral arguments, the board entered findings of fact and conclusions of law sustaining the charges. Based upon these findings and conclusions, the board entered an order canceling Mr. Quan's liquor dispensing permit.

Mr. Quan then sought judicial review of the board's action, under the provisions of RCW 34.04.010 et seq. (the Administrative Procedure Act, Laws of 1959, ch. 234, as amended by the Laws of 1963, ch. 237). It was apparently at this point that Mrs. Quan was formally joined as a party to the proceeding. The Superior Court for Thurston County initially dismissed the Quans' petition for review upon the grounds that the Administrative Procedure Act did not apply to this proceeding. On appeal, this court by order, and without opinion, remanded the proceeding to

the Thurston County Superior Court. That order, in pertinent part, recited:

> [T]hat petitioners sought a review by the Superior Court of the State of Washington in and for Thurston County of respondents' holding alleging that it was arbitrary and capricious, and that the Honorable Charles T. Wright, Judge of the Superior Court quashed and dismissed petitioners' application, now, therefore, it is hereby
>
> ORDERED that the order of dismissal is quashed and the cause remanded to the Superior Court of the State of Washington in and for Thurston County for hearing on the merits.

Pursuant to this order, the superior court reviewed the record of the proceedings, considered oral arguments and written briefs, and sustained the action of the board. From this determination, the Quans pursue the instant appeal.

Six assignments of error are made. Some are supported by the citation of authority and some are not.[2] Some merit discussion and some do not. All essentially reduce themselves to the ultimate assertion that the action of the board in canceling the outstanding liquor permit was arbitrary and/or capricious. This assertion is basically predicated upon rather broadside contentions that the board's action was without competent evidentiary support, violative of fundamental due process, and contrary to law.

At the outset, we pause to point out that in the recent case of *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965), we announced that RCW 66.08.150,[3] providing that orders and decisions of the board regarding any permit or license are final, was subject to the constitutional power of judicial review where the action of the

---

[2] We have held that assignments of error, which are not supported by cited legal authority, will not be considered unless it appears on the face of the assignment that it is well taken. *Harvey v. Cleman,* 65 Wn.2d 853, 400 P.2d 87 (1965); *Frey v. Kent City Nursing Home, Inc.,* 62 Wn.2d 953, 385 P.2d 323 (1963).

[3] "Save as in this title otherwise provided the action, order or decision of the board as to any permit or license shall be final and shall not be reviewed or restrained by injunction, prohibition or other process or proceeding in any court or be removed by certiorari or otherwise into any court." RCW 66.08.150.

board was alleged to be arbitrary and capricious. Thus, upon the posture of this case, we find it unnecessary to pass upon the question[4] of whether the instant proceeding was governed by the Administrative Procedure Act (RCW 34-.04.010, *et seq.*, as amended by Laws of 1963, ch. 237). Instead, we go directly to a consideration of whether the board's action was in fact or law arbitrary and/or capricious.

■ We have consistently defined arbitrary and capricious action on the part of administrative agencies as

willful and unreasoning action, without consideration and in disregard of facts or circumstances. *Lillions v. Gibbs,* 47 Wn.2d 629, 633, 289 P.2d 203 (1955).

And, we have summarized the tests to be used in evaluating administrative decisions as follows:

Did the agency proceed in accordance with and pursuant to constitutional and statutory powers? Were the agency's motives honest and intended to benefit the public? Were they honestly arrived at—that is, free from influence of fraud and deceit? Were they free of any purpose to oppress or injure—even though injury and damage to some may be inherent in accomplishing the particular public benefit? Did the administrative agency give notice, where notice is due, and hear evidence where hearings are indicated? Did the agency make its decision on facts and evidence? Were its actions in the last analysis rational, that is, based upon a reasonable choice supported by facts and evidence? If the answers to all of these queries are in the affirmative, then the decision of an administrator, unless placed under complete judicial review by law, cannot be held arbitrary, capricious, unreasonable or oppressive by the courts. That the courts may have reached a decision, made a choice or a conclusion different from that of the administrative agency,

---

[4]The effective date of Laws of 1963, ch. 237, bringing the board within the provisions of the Administrative Procedure Act, was June 13, 1963. The complaint in the instant case was filed November 29, 1962, and the hearing held June 28, 1963; hence, the question arises whether the proceedings were governed by the Administrative Procedure Act, or, as a pending proceeding was excluded from the Act. As indicated, we do not deem it necessary to pass upon this question.

or taken wiser or more sensible action, does not empower them to do so.

. . . . If the administrative agency has acted honestly, with due deliberation, within the scope of and to carry out its statutory and constitutional functions, and been neither arbitrary, nor capricious, nor unreasonable, there is nothing left for the courts to review. *Deaconess Hospital v. State Highway Comm'n,* 66 Wn.2d 378, 405, 403 P.2d 54 (1965).

■ There can be no question but that the board, in the interests of public health, safety, and morals, possessed the constitutional and statutory power to control and regulate the dispensation of alcoholic beverages. *State ex rel. Shannon v. Sponburgh, supra;* *"U" Dist. Bldg. Corp. v. O'Connell,* 63 Wn.2d 756, 388 P.2d 922 (1964); *Derby Club, Inc. v. Becket,* 41 Wn.2d 869, 252 P.2d 259 (1953); *Randles v. State Liquor Control Board,* 33 Wn.2d 688, 206 P.2d 1209, 9 A.L.R.2d 531 (1949); *Ajax v. Gregory,* 177 Wash. 465, 32 P.2d 560 (1934); RCW 66.24.010(3). Thus, the basic question remaining for determination in the instant case is whether the board in processing the complaint in issue proceeded in a fundamentally fair, honest, and deliberative manner within the scope of its constitutional and statutory power.

A careful review of the record before us compels the conclusion that the board did so act.

■ There is no indication whatsoever that the complaint was spitefully, maliciously, fraudulently, or groundlessly issued. Due notice of the complaint and of the date and opportunity to be heard was timely served upon the licensee. A full hearing was provided. At the hearing the licensee was represented by counsel of his choice. He was permitted full, fair, and judicious opportunity to cross-examine the complaining witnesses, challenge their credibility, and attack the weight of their testimony and evidence. He was allowed, without unnecessary or prejudicial restriction, to present evidence on his own behalf and in support of his denial of the accusations. He was afforded ample time and occasion to present written and oral arguments upon the merits. In short, he was afforded

full procedural due process at every step of the proceedings before the chief examiner and the board. The fact that the board, upon the basis of conflicting evidence, decided the issues contrary to his contentions does not establish a lack of fundamental due process, render the decision unlawful, nor make the board's action arbitrary, capricious or unreasonable. *Deaconess Hospital v. State Highway Comm'n, supra; Lillions v. Gibbs, supra.*

■ Furthermore, our examination of the record of the testimony and evidence presented to the board convinces us, as it did the trial court, that the findings and conclusions of the board are amply supported by substantial and competent evidence—which is the criterion in liquor license revocation proceedings. *Pauline v. Lee,* 147 So.2d 359 (Fla. 1962); *State ex rel. Favazza v. Ketchum,* 367 S.W.2d 542 (Mo. 1963); *Freeman v. Board of Alcoholic Control,* 264 N.C. 320, 141 S.E.2d 499 (1965); *Kearns v. Aragon,* 65 N.M. 119, 333 P.2d 607 (1958); *Murphy's Tavern, Inc. v. Davis,* 70 N.J. Super. 87, 175 A.2d 1 (1961); *245 Elmwood Ave., Inc. v. New York State Liquor Authority,* 14 App. Div.2d 393, 222 N.Y.S.2d 117 (1961), *aff'd* 229 N.Y.S.2d 422, 183 N.E.2d 701 (1962).

The offenses in question—the sale of beer on three successive Sundays—was supported by the direct testimony of the investigator making the respective purchases. He testified he asked for and was permitted to purchase beer. His testimony, in turn, was corroborated by the testimony of at least one officer who on each occasion observed the investigator enter the store empty handed and shortly thereafter leave the store with a sack containing a "six pack" carton of a standard brand of beer—the beer being in customized, labeled, and sealed bottles or cans. The cartons and the bottles or cans were marked by the officers with their initials and the date and time. They were produced, identified, and properly admitted into evidence at the hearing. *Allen v. Porter,* 19 Wn.2d 503, 143 P.2d 328 (1943). The two one-dollar bills allegedly used in the November 4 purchase were likewise produced and properly admitted into evidence. The foregoing, without more,

amounted to substantial, relevant and competent evidence. If accepted as true, it amply supports the board's findings.

■ The Quans contend, however, that there is a fatal hiatus in the evidence occasioned by the failure of counsel for the board to produce a chemical analysis of the contents of the sealed bottles and cans admitted into evidence. We cannot agree. In an administrative proceeding such as this, before a tribunal whose very function is to regulate the retailing of beer within the state, we are satisfied that the testimony of the investigator, coupled with the type, nature, and condition of the bottles and cans introduced, is sufficient to raise a prima facie inference that the contents are that which is defined as beer in RCW 66.04.010(2).[5] Absent any indication that the containers had been tampered with, and absent even any objection going to admissibility on the grounds now asserted, the failure of counsel for the board to offer a chemical analysis of the contents goes to the weight rather than the competence of the evidence. *Cf. Kempe v. Board of Liquor Control,* 81 Ohio L. Abs. 425, 156 N.E.2d 344, *aff'd* 156 N.E.2d 344 (1957); *Fumea Liquor License Case,* 186 Pa. Super. 609, 142 A.2d 326 (1958); *Secrist Liquor License Case,* 195 Pa. Super. 73, 169 A.2d 314 (1961).

Finally, and principally, the Quans contend that the action of the board was arbitrary, capricious and/or unreasonable in that Mrs. Quan's acquittal of the two criminal charges, and the prosecuting attorney's dismissal of the third, constituted a bar to the instant administrative proceedings against the licensee, Mr. Quan.

Again we disagree.

---

[5]"In this title, unless the context otherwise requires:

"  .  .  .

"(2) 'Beer' means any beverage obtained by the alcoholic fermentation of an infusion or decoction of pure hops, or pure extract of hops and pure barley malt or other wholesome grain or cereal in pure water containing not more than four percent of alcohol by weight, and not less than one-half of one percent of alcohol by volume. For the purposes of this title any such beverage, including ale, stout and porter, containing more than four percent of alcohol by weight shall be referred to as 'strong beer.' "

■ The dominion of the board over the regulation, supervision and licensing of the retail sale of intoxicating liquors is, by legislative enactment, broad and extensive. *State ex rel. Shannon v. Sponburgh*, 66 Wn.2d 135, 401 P.2d 635. The license to retail intoxicants which the board may confer upon a permittee does not become a vested property right upon the issuance thereof. It constitutes, rather, a temporary permit, in the nature of a privilege, to engage in a business that would otherwise be unlawful. *State v. Lake City Bowlers' Club, Inc.*, 26 Wn.2d 292, 173 P.2d 783 (1946); *Arndt v. Manville*, 53 Wn.2d 305, 333 P.2d 667 (1958). It is issued under and upon prescribed conditions. Among the conditions is compliance with laws and regulations pertaining to the sale of intoxicants. And, the permittee takes the license subject to such condition, as well as subject to the continuing regulation, supervision, and jurisdiction of the issuing authority—the board—which includes the power in the board, under appropriate circumstances, to suspend or cancel the license. RCW 66.24.010.

■ Board action, directed toward the suspension or cancellation of a retail liquor license is not a criminal proceeding. Essentially, it is an administrative regulatory proceeding—civil and disciplinary in nature—the purpose of which is to protect the public health, safety and morals from imprudent, improper, and/or unlawful actions of the board's licensees in the exercise of the privilege conferred upon them. *State v. Meyers*, 85 Idaho 129, 376 P.2d 710 (1962); *Kearns v. Aragon, supra.* A criminal prosecution of the licensee is not a condition precedent to regulatory action by the board, and acquittal of the licensee in a criminal proceeding does not oust the jurisdiction of the board. In short, criminal prosecution does not debar board discipline; nor does board discipline debar criminal prosecution. The two, from the standpoint of policy, purpose, or burden of proof, simply do not walk hand in hand. *Hays v. Louisville*, 145 Ky. 125, 140 S.W. 47 (1911); *Keller v. Kentucky Alcoholic Beverage Control Bd.*, 279 Ky. 272, 130 S.W.2d 821 (1939); *Lynch's Builders Restaurant v. O'Connell*, 303 N.Y. 408, 103 N.E.2d 531 (1952); *In re Swan*

*Restaurant, Inc. v. New York State Liquor Authority,* 21 Misc. 2d 102, 196 N.Y.2d 225 (1959); *Dadiskos v. Liquor Control Comm'n,* 150 Conn. 422, 190 A.2d 490 (1963); *Noyes v. Liquor Control Comm'n,* 151 Conn. 524, 200 A.2d 467 (1964); *Kearns v. Aragon, supra; Freeman v. Board of Alcoholic Control, supra.*

In the instant case, the criminal prosecution against Mrs. Quan did not preclude or foreclose board action against the licensee, Mr. Quan. The board was entitled to conduct its own administrative proceeding, make its own findings, and act within the scope of its authority and responsibility upon those findings.

The judgment of the superior court sustaining the action of the board is affirmed.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

---

November 21, 1966. Petition for rehearing denied.