William MEDLEY, Appellee,

v.

MARYVILLE CITY BEER BOARD, et al., Appellants.

Sidney C. MILSAPS, et al., Appellees,

v.

CITY OF MARYVILLE, et al., Appellants.

Supreme Court of Tennessee,
at Knoxville.

Feb. 16, 1987.

On Petitions for Rehearing
March 30, 1987.

Albert J. Harb, Roy L. Aaron, James A. McIntosh, Knoxville, for appellees.

Roy D. Crawford, Duncan V. Crawford, Maryville, for appellants.

## OPINION

HARBISON, Justice.

These two cases were consolidated for trial. Both appellee Medley and appellee Milsaps held licenses for the sale of beer issued by the City of Maryville for the period December 3, 1983, through December 2, 1984. Employees of each of these licensees sold a six-pack of beer to a seventeen-year-old youth on October 12, 1984. Because it was his first established violation of the liquor laws, the Beer Board suspended the license of Medley for ten days. The offense was the second violation occurring at the premises of Milsaps, and

his license was suspended for a period of one year. Both licensees sought review in the Chancery Court pursuant to the provisions of T.C.A. § 57–5–109.

The Chancellor found that both licensees had violated a municipal ordinance prohibiting the sale of beer to minors, as well as the state statute, T.C.A. § 57–5–301(a). Because the minor had been employed by the municipal police to attempt to make purchases at all premises licensed in the city on October 12, 1984, however, the trial judge held that the violations were technical only and that punishment should be mitigated to a simple reprimand in each case. The municipal beer board appealed to this Court. We reverse and reinstate the decision of the Beer Board.

Neither appellee has insisted before this Court that the principles of entrapment, applicable in criminal law, should be extended to this case.[1] However, both they and the Chancellor deem the fact situation to be somewhat analogous to one of entrapment. In effect, the licensees seek to place responsibility for their illegal sales upon the licensing authority or other municipal officials.

It appears without dispute that police officials in Maryville had received a number of complaints from parents and others concerning the illegal sale of beer to minors in the area. Some forty establishments held beer permits from the City of Maryville, and the police enlisted the aid of a seventeen-year-old youth, Larry Gregory, to go to these establishments and attempt to purchase beer there. He was instructed not to falsify his age or identification, but to produce his true identification if requested. He was casually dressed in jeans and an open flannel shirt. He wore a baseball cap, was clean-shaven and wore photosensitive glasses, the lenses of which darkened in sunlight. Gregory had finished the eleventh grade and was interested in becoming a police cadet.

He had been acquainted with a Maryville police officer for some time, and both he and his parents agreed to his participating in the operation, for which he was paid twenty dollars by the City. He drove alone to each establishment, entered and attempted to purchase beer. He was wearing a sound transmitter, so that police officials in an accompanying van could monitor his conversation with store employees. He was photographed entering and leaving each of the establishments involved here, as well as several others. Both he and the listening police officers testified that in neither of the places of business operated by appellees was Gregory questioned about his age, asked to show his identity or otherwise investigated with respect to whether he was of legal age to purchase beer.

Neither of the licensees offered any testimony before the Chancellor. One of them gave some brief evidence before the Beer Board. None of the employees of either establishment was called as a witness. Through cross-examination, counsel for appellees sought to establish that the minor appeared to be more than eighteen years of age, but the trial judge did not so find. The trial judge found that Gregory "could be taken either way."

Gregory testified that neither of the establishments was crowded or busy when he made his purchase, and in one of the stores only a single additional customer was even present. It clearly appears from the record that the employees of the two establishments made no effort to determine whether Gregory was or was not of legal age, nor is there any evidence in the record that they were misled or deceived in any manner. Sales were made to him without question and without investigation.

■ There is, in this state, no right to sell beer. It is a privilege extended only by license or permit. Both the state statutes and municipal ordinance in question flatly forbid sales to minors, and there is no mitigation provided in either if the minor is under eighteen years of age, as was true in this case.[2]

---

1. See State v. Jones, 598 S.W.2d 209 (1980).

2. Under some circumstances, if the minor is over eighteen years of age, suspension, rather than outright revocation, is prescribed if the minor exhibits false identification or if his appearance is such that he might reasonably be

■ Appellees strongly argue that a minor purchasing beer violates the law and is himself guilty of a misdemeanor. T.C.A. § 57–5–301(d). While this is true, it is hardly a defense to the seller. Were it a defense, the seller would be immune from revocation or suspension of his license in any instance when a sale was made to a minor.

■ Nor, in our opinion, is there any defense or mitigation because the police had the minor under surveillance in order to ascertain whether particular establishments were or were not complying with the law in the conduct of their business. This Court has held that retail beer permits may be suspended or revoked for one year because of sales to minors. *See Richards v. Lewisburg Alcoholic Beverage Commission,* 543 S.W.2d 852 (Tenn.1977). If such sales occur, whether under police surveillance or not, the terms and provisions under which the license was issued are violated and the Beer Board has authority to suspend or revoke.

This Court stated many years ago:

"The revocation of a license is not intended as a punishment of the holder but to insure as far as possible the decent and orderly conduct of his establishment." *Flowers v. Benton County Beer Board,* 202 Tenn. 56, 64, 302 S.W.2d 335, 339 (1957).

■ There is some authority for extending the doctrine of "entrapment" to certain types of civil cases, including regulatory proceedings. *See Patty v. Board of Medical Examiners,* 9 Cal.3d 356, 107 Cal.Rptr. 473, 508 P.2d 1121 (1973). Appellees in their briefs before this Court have not actually sought an extension of that principle to these proceedings.[3] In all events we do not deem it appropriate to extend it to civil cases such as this, especially in a field so highly regulated and controlled as that in-volving the sale and distribution of alcoholic beverages.

While there is some division of authority on the point, most of the cases cited to us involving a civil suspension or license revocation, rather than a criminal prosecution, have not permitted a defense similar to that of entrapment in criminal cases, where police did no more than use a minor as a decoy to attempt to make illegal purchases. *See generally Roberts v. Illinois Liquor Control Commission,* 58 Ill.App.2d 171, 206 N.E.2d 799 (1965); *People v. Reynolds,* 139 Mich.App. 471, 362 N.W.2d 763 (1984); *Kerns v. Aragon,* 65 N.M. 119, 333 P.2d 607 (1959) and the numerous authorities cited in those opinions. Even in criminal proceedings arising out of such sales, the doctrine of entrapment has frequently been held not to be established when the police did no more than to employ a minor as a decoy and to place him under surveillance while he requested the sale of an intoxicant. *See State v. Boylan,* 158 Minn. 263, 197 N.W. 281 (1924); *State v. Parr,* 129 Mont. 175 283 P.2d 1086 (1955); Annot. 55 A.L.R.2d 1322, 1351 (1957).

■ We are of the opinion that there was no showing of "unclean hands" or other impropriety on the part of municipal police which would justify the licensees in this case in making an illegal sale without any kind of investigation whatever, nor does police conduct justify any mitigation of sanctions imposed upon the licensees under a principle such as "unclean hands" or "trickery" as urged by appellees.

The unlawful sale of alcoholic beverages to minors is a major social problem throughout the state and nation. Police officials in this case did no more than to attempt to reach the source of it and to try to determine whether one of such sources consisted of regularly licensed retail outlets. The result was somewhat startling. Of nearly forty licensees, ten, or over twen-

presumed to be over twenty-one years of age and is unknown to the person making the sale. T.C.A. § 57–5–109(b).

**3.** The brief of appellee Medley states: "The appellee submits that the entrapment defense has no application to the issues before the Court."

Brief p. 12. Appellee Milsaps states that "entrapment is not a principal (*sic*) of the civil law" but that the Chancellor analogized to it in applying the principles of "clean hands" and "good faith" by the enforcing authorities. Brief, p. 5.

ty-five percent, made sales to the seventeen-year-old Larry Gregory without any inquiry, request for identification or other investigation.

The judgment of the Chancellor in mitigating the sanctions to a reprimand is reversed. The cause will be remanded to the Chancery Court with directions to remand it to the Beer Board for enforcement of its original judgment or for such modification by reason of passage of time or changed circumstances as the Board deems necessary. At the time of the hearing before the Beer Board and the Chancellor, one of the licensees was in bankruptcy. The licenses involved were issued for only one year. It may be that the sanctions originally imposed are no longer appropriate. We cannot make that determination from the present record, but the Beer Board has discretion to impose such sanctions as it now finds appropriate, not to exceed those originally assessed.

All costs are taxed to appellees.

BROCK, C.J., and DROWOTA and COOPER, JJ., concur.

FONES, J., files dissent.

FONES, Justice, dissenting.

I dissent.

The trial judge's findings included the following:

"The plan was, as was testified to by the minor juvenile, that a person would be selected and would go into these stores who would at least in some manner give the appearance of being of legal age and for the purpose of inducing or at least making available the opportunity for the business to sell to the minor in violation of the city ordinance and also in violation of the state statutes ...

Under his testimony, he was instructed to portray himself in making these purchases as a person over eighteen years of age. And the Court must say from observing Mr. Gregory, that he certainly presents himself in an excellent way and manner; he's very self-possessed. He may not have the formal education that normal people of his age has, [sic], but

he's certainly above average in intelligence and certainly there is a serious question; the average person observing him as to whether or not he could be considered to be of legal age to buy beer. That's one of the tested issues here.

The City's taken the position that his appearance does not allow for that. The other parties petitioners' saying it does. This Court's observation is that he could be taken either way.

... The petitioners recognize that the sales did occur and that the sales did occur to a person who was not of legal age, but aver that they should not be liable or suffer any punishment because of the alleged entrapment or the instituting and carrying out of this charade, if it may be called such, of presenting this minor in that situation hoping that he would convey to those he was dealing with that he was of legal age."

In my view, this case squarely presents the issue of whether entrapment should be extended to civil proceedings to revoke beer and liquor licenses. The fact that the lawyers for the license holders at jeopardy here have not urged this Court to do so, does not eliminate the issue. Obviously they have adopted the strategy of agreeing with the trial court's adjudication

... that mitigation is not only proper but is mandated because of the way and manner in which the city saw fit to do this. Nowhere in the law, with few minor exceptions—might call them major in some cases, but few exceptions—is any person allowed to violate the law in order to get someone to violate the law and to have impunity. That's what happened here.

The licensees asserted the defense of entrapment in the trial court. That court held that defense to be unavailable in civil cases but mitigated the punishment imposed for the admitted unlawful sale of beer to mere reprimands. In rendering his opinion the trial judge made reference to an opinion issued by the Tennessee Attorney General, which stated that law enforcement officials utilizing a minor in an undercover operation of this nature and the mi-

nor decoy might be in violation of Tennessee criminal statutes. Opinion of Tennessee Attorney General, *Criminal Liability of Law Enforcement Officials Employing Undercover Minor*, Dec. 21, 1984. The Attorney General noted that law enforcement officials possess no general immunity from the criminal law, even though the Legislature could presumably grant such immunity as it has in undercover operations involving the purchase of narcotics paraphernalia. *See* T.C.A. § 53–11–410(c).

There is an apparent split of authority on whether the defense of entrapment should be available in a civil proceeding to revoke or suspend a liquor license. *Compare Kearns v. Aragon*, 65 N.M. 119, 333 P.2d 607 (1959) (unavailable) *with Langdon v. Board of Liquor Control*, 130 N.E.2d 430, 98 Ohio App. 535 (1954) (available). In *Kearns*, the liquor-licensee had his permit revoked for selling alcohol on Sunday to an undercover New Mexico State Trooper. In refusing to permit the licensee to argue that he was entrapped, the New Mexico Supreme Court noted that a hearing before the Chief of Liquor Control was an administrative, rather than criminal, proceeding, the purpose of which was not to punish the licensee, but rather to ensure the "decent and orderly conduct of a business affecting public health, morals, safety and welfare." *Kearns v. Aragon*, 65 N.M. 119, 333 P.2d at 610 *citing Flowers v. Benton County Beer Board*, 202 Tenn. 56, 302 S.W.2d 335 (1957). The New Mexico court concluded that the police power so pervades the liquor business that "[liquor license] revocation proceedings are not governed by rules of law applicable to criminal prosecutions," and, thus, "entrapment is not a defense in an administrative proceeding to revoke a liquor license." *Kearns v. Aragon*, 333 P.2d at 610.

In deciding, however, whether the defense of entrapment ought to be available

in a civil proceeding to suspend a beer license in Tennessee, I believe that the California Supreme Court's opinion in *Patty v. Board of Medical Examiners*, 9 Cal.3d 342, 107 Cal.Rptr. 473, 508 P.2d 1121 (Cal. 1973), more accurately addresses the policy bases of the defense than the formalistic reasoning in *Kearns*. The issue in *Patty* was whether the defense of entrapment should be available in an administrative hearing before California's Board of Medical Examiners. An investigator for the Board had hired undercover agents to attempt to secure prescriptions from the defendant for narcotics ostensibly to get "high." In a well-reasoned opinion, the California court, per Justice Tobriner, reversed the Board's decision to prohibit Dr. Patty from raising the defense of entrapment in the administrative proceeding. Noting that the purpose of the defense is "the preservation of the dignity of the legal process and of public confidence in it," *Id.* 107 Cal.Rptr. at 474, 508 P.2d at 1122, the court concluded that "[t]he public's concern with the fair administration of justice attaches equally to administrative as to judicial proceedings." *Id.* 107 Cal.Rptr. at 476, 508 P.2d at 1126.

I agree with the *Patty* court's conclusion. In short, I concur in Justice Tobriner's statement that " '[s]ound public policy' and 'good morals' [citation omitted] are incompatible with entrapment of an innocent person into the commission of a crime in order to revoke his professional [or beer] license as clearly as they are incompatible with entrapment to obtain a criminal conviction." *Patty v. Board of Medical Examiners*, 107 Cal.Rptr. at 478, 508 P.2d at 1126.

I would hold that the defense of entrapment as enunciated in *State v. Jones*,[1] is applicable in proceedings charging beer licensees with violations of this State's li-

---

1. [E]ntrapment occurs when law enforcement officials, acting either directly or through an agent, induce or persuade an otherwise unwilling person to commit an unlawful act; however, where a person is predisposed to commit an offense, the fact that the law enforcement officials or their agents merely afford an opportunity does not constitute entrapment.

We qualify this, however, by the admonition that "outrageous police behavior in light of surrounding circumstances," the "over-involvement" of the police or the intensity of their activities, could reach such a level that due process is so offended that predisposition is not relevant. *State v. Jones*, 598 S.W.2d at 220.

quor laws. If the licensees were entrapped, the issue of punishment is moot because entrapment is a complete defense. *See, State v. Jones, supra.*

In *State v. Jones,* this Court held that a criminal defendant bears the burden of establishing a prima facie case of entrapment, whereupon the State must prove beyond a reasonable doubt that the defendant had a predisposition to commit the offense. *State v. Jones,* 598 S.W.2d at 220, *citing United States v. Jones,* 575 F.2d 81 (6th Cir.1978). It would be inappropriate in a civil case to require governmental entities to carry that heavy burden of proof. The licensee should be required to make out a prima facie case of entrapment by a preponderance of the evidence, whereupon the governmental entity would have the burden of going forward with a showing that the licensee was predisposed to violate the law, also by a preponderance of the evidence, to support a judgment of suspension or revocation.

It follows that I would remand to the trial court for a decision on the issue of entrapment which could be done on the present record, supplemented as appropriate.

### OPINION ON PETITIONS FOR REHEARING

HARBISON, Justice.

A petition for rehearing has been filed on behalf of appellant Maryville City Beer Board for the purpose of correcting an error in the majority opinion. The opinion states that the suspension of the license of Medley was for ten days, when in fact it was for thirty days.

The petition for rehearing is granted for the purpose of correcting the error. The majority opinion, page 2, line 8, is corrected to state that the suspension was for thirty days.

A petition for rehearing filed on behalf of Appellee William J. Medley is denied, the members of the Court adhering to the positions stated in the original opinions.

BROCK, C.J., and DROWOTA and COOPER, JJ., concur.

FONES, J., dissents.