[No. 13914-6-II. Division Two. May 4, 1992.]

S&S MARKET, INC., *Appellant,* v. LIQUOR CONTROL BOARD, ET AL, *Respondents.*

518

*Richard D. Turner* and *Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Paul D. Solomon, Assistant; William Barker, City Attorney,* and *Cheryl F. Carlson, Assistant,* for respondents.

SEINFELD, J. — In 1988 S&S Market (S&S) applied for renewal of its liquor license to sell beer and wine. The Liquor Control Board (Board) denied the application for the stated reason that S&S violated administrative regulations by allowing its customers to consume alcohol and to engage in disorderly conduct on premises under S&S's control adjacent to the market. S&S appeals the Pierce County Superior

Court order affirming the Board's denial of the license. We hold that the Board and the Superior Court erred by ruling that S&S had "control" over the areas adjacent to their licensed premises. We therefore vacate the order and remand to the Board.

S&S Market is a small convenience store that had a class E-F liquor license which allowed it to sell beer and wine, although liquor could not be consumed on the premises. RCW 66.24.360, .370. A liquor license automatically expires at the end of the fiscal year in which it was issued and the licensee must then apply to the Board for reissuance. *See* RCW 66.20.060. The Board may, in its discretion, grant or refuse the application. RCW 66.24.010. However, in contrast to Board action denying an initial application, its "action . . . as to any denial of an application for the reissuance" of a liquor license is a contested case and subject to the provisions of the Administrative Procedure Act. RCW 66.08.150; *Prestige Stations, Inc. v. Liquor Control Bd.*, 33 Wn. App. 669, 672, 657 P.2d 322 (1982). Upon request, the applicant for reissuance is entitled to an administrative hearing prior to the disposition of the application. RCW 66.08.150. The Board's findings and conclusions must be supported by substantial and competent evidence. *Jow Sin Quan v. Liquor Control Bd.*, 69 Wn.2d 373, 418 P.2d 424 (1966). The city in which a licensee operates is entitled to notice of all license applications within its borders and may file written objections to the application. RCW 66.24.010(8). In addition, no new beer retailer licenses may be approved for premises within 500 feet of a public elementary or secondary school if the school authorities object. RCW 66.24.010(9).

S&S Market has been located in a primarily residential area on the corner of South 8th and Ainsworth streets in Tacoma for over 10 years. After the Board's initial approval of the sale of liquor at this location, an elementary school was opened across the street. The store building itself is set back from the street and there is a small fenced-in area between the front door of the market and the city sidewalk. The sidewalk runs along the outside of the fence.

Following formal notification to the City of Tacoma of S&S Market's application for reissuance of its liquor license, the City's chief of police filed a written objection. Based on this objection, the Board notified S&S that its license would not be renewed, citing the chief's reasons: "a. continuing citizen complaints; b. a complaint from the principal of the nearby elementary school; c. a controlled minor buy of liquor; and d. that it would be in the best interest of the community if liquor was not sold from your business location."

S&S requested a hearing and the Tacoma police, school officials and residents of the neighborhood, as well as the owners of the market, testified as to the activity around the store. The testimony both in favor of and opposed to renewing the liquor license painted a picture of a neighborhood in transition, of increasing crime and drug trafficking, and of a community seeking safe and sanitary living conditions. Neighbors complained that the market attracts undesirable customers who loiter in the vicinity, consuming their alcoholic purchases, engaging in rowdy behavior, and discarding empty beverage containers on public walkways, on school property and in private yards. There was also testimony regarding the futile efforts of Afif Shaibi, the proprietor of S&S, to control his patrons and to maintain his small fenced-in yard litter free. The factual dispute centered on (1) the extent to which S&S's sale of liquor contributed to the neighborhood problems; and (2) the ability of the proprietors of S&S to require its patrons to comply with appropriate standards of conduct after they leave S&S premises.

After hearing the above testimony, the administrative law judge (ALJ) noted S&S Market's "lack of proper control and outright failure or refusal to attempt to control the activities which take place outside on the public property adjacent to the market." The ALJ further concluded:

> The littering and trashing that occurs on the school grounds, the harassment of school employees, and the general overall unfavorable atmosphere or tenor which is presented by the market to the children attending Bryant elementary leads us to conclude that the public interest would require that the license to sell beer and wine at the market should not be

renewed. . . . We concede the market and Mr. Shaibi in partic- ular may be in part the victim of the social problems existing in the Hilltop area. But we are convinced the evidence shows that the licensee's sale of liquor has resulted in much of the anti-social behavior complained of by the witnesses.

The administrative law judge determined that S&S Market violated two administrative regulations,[1] and he held that the market's application for reissuance of its liquor license was properly denied by the Board. The Board adopted the ALJ's findings of fact and conclusions of law as its own and denied the renewal application.

S&S appealed the administrative decision to the Pierce County Superior Court, which affirmed the Board's determination. S&S now appeals the superior court order, and we reverse.

This court's review of a contested decision of the Liquor Control Board is governed by the Administrative Procedure Act. Because the order of nonrenewal was entered in 1988, we will examine this case under the provisions of former RCW 34.04.130, which states that a reviewing court may reverse an administrative decision if it finds that "the administrative findings, inferences, conclusions, or decisions are", *inter alia*: "in violation of constitutional provisions; or . . . affected by other error of law". Former RCW 34.04.130(6)(a), (d).

In this case, appellant assigns error to the administrative law judge's conclusion of law, adopted by the Board, that the streets and sidewalks located around S&S are under its con-

---

[1]Specifically, the administrative law judge found that S&S had violated WAC 314-16-040 and WAC 314-16-120(2).

WAC 314-16-040 provides in part:

"No retail licensee shall possess or allow any person to consume or possess any liquor other than that permitted by his license in or on the licensed premises, or on any public premises adjacent thereto which are under his control except under the authority of a banquet permit; . . .".

WAC 314-16-120(2) provides in part:

"No licensee or employee thereof, shall be disorderly, boisterous or intoxi- cated on the licensed premises, or on any public premises adjacent thereto which are under the licensee's control, nor shall any licensee, or employee thereof, permit any disorderly or boisterous person to be thereon; nor shall any licensee, or employee thereof, use or allow the use of profane or vulgar language thereon . . .."

trol. S&S further contends that the WAC references to "public premises" "under the control" of the licensee are unconstitutionally vague and, therefore, should not be applied. Finally, S&S argues that the Board was estopped from denying that it advised the market owners that S&S's responsibility was limited to its licensed premises.

■■ Whether S&S has a duty, or even a right, to monitor and control the activity of its patrons in the areas adjacent to the store is a question of law and an error of law standard of review applies. Under the error of law standard, this court is charged with independently determining the purpose and meaning of the administrative regulations as applied to the facts of this case. *See Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). We hold that it was error to conclude that S&S violated the pertinent regulations when it failed to control the behavior of its patrons on the public streets and sidewalks adjacent to the store.

The regulations relied upon by the administrative law judge make the holder of a liquor license responsible for conduct on the licensee's premises or on any public premises adjacent thereto *which are under the licensee's control*. We agree with S&S Market's contention that the street and sidewalk areas where the complained-of conduct occurred are not premises under its control within the meaning of the regulations.

■ The language "under his control" is not defined in the Board's administrative regulations, nor is a definition set out anywhere in RCW Title 66, the title governing liquor control. When construing a statute containing undefined terms, this court must accord the words of the statute their ordinary meaning. *Davis v. Department of Empl. Sec.*, 108 Wn.2d 272, 279, 737 P.2d 1262 (1987). The ordinary meaning of the word control, according to Webster's dictionary, is "to exercise authority over; direct; command." Consequently, in order for the regulations to apply to S&S Market, it must be shown that the owners were entitled to exercise authority

over the city streets and sidewalks adjacent to the store. Respondents have not met this burden.

Respondents contend that various sections of the Tacoma Municipal Code demonstrate that the owners of property adjacent to public streets and sidewalks have the legal ability to control third party conduct on those public ways. RCW 35.22.280(7) does give a city the authority to

> lay out, establish, open, alter, widen, extend, grade, pave, plank, establish grades, or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks, and other public grounds, and to regulate and control the use thereof . . ..

As a result, a city may certainly impose upon its citizens particular duties with regard to the public streets and sidewalks. Through its municipal ordinances, the City of Tacoma has imposed a number of affirmative duties on those landowners whose land abuts a public street or sidewalk. *See, e.g.*, Tacoma Municipal Code 9.16.040 (it is the duty of the "person having charge or control of any premises within the city to keep the walk or walks along the property in the street or streets adjacent thereto in a clean condition"); Tacoma Municipal Code 9.16.050 (it is the duty of the "person having charge or control of any premises located within the City of Tacoma to remove or cause to be removed from the public walks along the side or in front of the premises all snow or ice . . ."); former Tacoma Municipal Code 9.17.010-.020 (unlawful for any person or firm "occupying or having charge or control of any premises abutting upon any street, alley or other public right of way to create or maintain any condition dangerous or hazardous to public;" owner of abutting property is liable for any injury caused by dangerous condition).

The above ordinances do not, however, suggest that the abutting landowner has "control" over the streets and sidewalks; rather, they show that landowners have, in certain situations, particular duties with respect to the streets and sidewalks. No authority declares that S&S Market had a legal duty, or even a legal right, to control third party conduct on city-owned property. In fact, a number of other

Tacoma city ordinances prohibit a landholder from engaging in certain activities with respect to the adjoining streets and sidewalks. *See, e.g.,* Tacoma Municipal Code 9.16.015 (landholder can only use first 18 inches of sidewalk for display or advertising); Tacoma Municipal Code 10.22.020 (permit required for any construction, excavation, alteration, etc., of any sidewalk).

Because the ALJ erred in concluding that the city streets and sidewalks adjacent to the market were under the "control" of S&S it was also error to deny the reissuance of the liquor license based on S&S's alleged violation of those administrative regulations requiring it to exercise control to prevent any consumption of liquor or disorderly conduct on "public premises adjacent thereto which are under the licensee's control". WAC 314-16-120(2).

Although there was ample evidence to support the ALJ's conclusion that it is in the best interest of the neighborhood and of the schoolchildren attending Bryant Elementary that liquor not be sold at the corner of South 8th and Ainsworth, this reason was not the stated basis for the Board's decision. In fact, in oral argument the State conceded that the statutory prohibition against granting a liquor license to premises within 500 feet of a school does not apply to renewal applications. Here, the licensed establishment preexisted the school. While we recognize the problems inherent in the close proximity of a school to a market selling beer and wine, and the particularly serious complaints here, S&S has the right to have its case decided in accordance with agency regulations, former RCW 34.04.090, and to have any decision adverse to it be based on supportable findings of fact and conclusions of law, former RCW 34.04.120. As the Board's decision was to a large extent premised upon the failure of S&S to control adjacent public properties, which S&S was not legally entitled to control, it is necessary to remand this matter to the Board for reconsideration as to whether the other factors discussed by

the ALJ, standing alone, support the determination to deny the reissuance application.

█ Based on the above determination that S&S lacked the ability to control public areas, it is not necessary to address the challenge to the constitutionality of WAC 314-12-040(1) and WAC 314-16-120(1). "A reviewing court should not pass on constitutional matters unless absolutely necessary to its determination of the case." *State v. Maxwell*, 114 Wn.2d 761, 771, 791 P.2d 223 (1990) (quoting *State v. Ng*, 110 Wn.2d 32, 36-37, 750 P.2d 632 (1988)). Nor is it necessary at this time to decide the estoppel issue raised by appellant.

The trial court order is vacated and this matter is remanded for further proceedings.

PETRICH, C.J., and MORGAN, J., concur.

After modification, further reconsideration denied July 8, 1992.