2008-NMCA-065

184 P.3d 444

**ERICA, INC., Licensee, d/b/a Food Basket No. 11, Liquor License No. 881, Petitioner–Appellant,**

v.

**NEW MEXICO REGULATION AND LICENSING DEPARTMENT, ALCOHOL AND GAMING DIVISION, and the Director of the Alcohol and Gaming Division, Respondents–Appellees.**

No. 26,824.

Court of Appeals of New Mexico.

March 31, 2008.

Linda L. Aikin, Santa Fe, NM, for Appellant.

Gary K. King, Attorney General, Zachary Shandler, Assistant Attorney General, Santa Fe, NM, for Appellees.

## OPINION

SUTIN, Chief Judge.

{1} Appellant ERICA, Inc. (ERICA), a licensed liquor establishment, filed a petition for writ of certiorari in this Court seeking review of a decision by a hearing officer of the Alcohol and Gaming Division of the New Mexico Regulation and Licensing Department. The hearing officer determined that ERICA sold alcohol to a minor on two separate occasions, contrary to NMSA 1978, § 60–7B–1(A)(1) (1998) (amended 2004). We granted the petition.

{2} ERICA argues that the hearing officer misapplied the law in construing NMSA 1978, § 60–7B–6 (1985), which provides a defense when the "accused licensee in good faith demanded and was shown an identity card before furnishing any alcoholic bever-

ages to a minor," as well as in construing Section 60–7B–1, which requires that the seller of the alcohol "knows or has reason to know" that the purchaser is a minor. ERICA also argues that there were several violations of its right to procedural due process before and during the hearing in front of the hearing officer, as well as violations of substantive due process resulting from entrapment. We conclude that the hearing officer too narrowly defined the defense allowed by Section 60–7B–6. We also conclude that the hearing officer erred in excluding and striking evidence that was relevant on the issue of entrapment.

**BACKGROUND**

{3} On October 16, 2001, and February 8, 2002, the New Mexico Department of Public Safety (DPS), specifically, Agent Mullen and Agent Slavens of the Special Investigations Division, conducted "minor sting operations," whereby minors went into licensed liquor establishments and attempted to purchase alcohol. During the first sting, two minors, Sarah T. and Dana R., went into a store owned and operated by ERICA called the Food Basket. Sarah T. took some alcohol to a register operated by Melanie Montes, who asked to look at Sarah T.'s identification. Sarah T. handed Ms. Montes her New Mexico issued driver's license, which stated that Sarah T. was born on October 24, 1981, making Sarah T. nineteen years old at the time she purchased the alcohol. Sarah T.'s license did not have "a printed legend" indicating that she was under twenty-one, although NMSA 1978, § 66–5–47(A)(2) (1999), requires such a legend on the driver's license of a minor.

{4} Ms. Montes testified that, based on having seen the driver's license of a minor acquaintance, she thought that the license of a minor would look different than that of an adult. She testified that Sarah T.'s license was horizontal and that her minor acquaintance's license was vertical. She did not testify that she was aware of the requirements of Section 66–5–47 or that she had been trained to look for the under twenty-one legend on a driver's license. Further, Ms. Montes did not testify as to whether she calculated Sarah T.'s age or even looked at her date of birth on the driver's license. Ms. Montes had been hired by ERICA less than thirty days earlier and she had not yet obtained alcohol server training, which she was required to obtain within thirty days of employment. NMSA 1978, § 60–6E–4 (2000) ("No person shall be employed as a server on a licensed premises unless that person obtains within thirty days of employment alcohol server training.").

{5} During the second sting operation, Deputy Frank Pena, III, a minor at the time of the operation, went into the Food Basket and purchased alcohol. Rosie Snow, who was operating the cash register, did not request to see Deputy Pena's license. According to the findings of fact of the hearing officer, Deputy Pena looked very youthful on the date of the sting and still looked very youthful on the date of the hearing, several months later.

{6} The Alcohol and Gaming Division (the Division) issued two citations, a charge, and an order to appear at a show cause hearing for ERICA to explain why its liquor license should not be suspended or revoked and why ERICA should not be fined for selling alcohol to minors on both occasions. Prior to the hearing, ERICA requested that the Division issue a subpoena duces tecum for Lillian Martinez, Deputy Director of the Division, or her designee, requesting Ms. Martinez to bring a copy of a memorandum (the memorandum) purportedly sent from the Division to licensees in 1994. ERICA sought the memorandum because it purportedly stated that the driver's license of a minor would indicate that the minor was under twenty-one until a certain date.

{7} The Division did not issue the subpoena and, thus, ERICA filed a motion to compel the issuance of the subpoena. The Division objected to issuing the subpoena on several grounds, including that employees of the Division were not sure that the memorandum was ever sent to licensees. Neither party had made arguments as to the relevance of the memorandum before the hearing officer issued his denial of the motion. The hearing officer denied the motion to compel issuance of the subpoena and also issued preliminary conclusions of law as grounds for

the denial, stating that the hearing officer was familiar with the memorandum and that it "has no relevant relationship to, nor is it probative with respect to, any of the issues in this proceeding and is, therefore, inadmissible as evidence."

{8} At the same time, the hearing officer also concluded that the "only express requirements" for a driver's license or any other identification were that the document be issued by a government and contain a picture of the person identified. *See* NMSA 1978, § 60–7B–2 (1985). Therefore, he ruled as follows:

> Driver[']s licenses and other government documents meeting these requirements are admissible in this proceeding as evidence of age and identity and no other attributes shall be required. Accordingly, no testimony or other evidence will be heard or admitted in this proceeding relative to the validity of any relevant identification that meets these two requirements.

After the denial of the motion to compel subpoenas and the foregoing pre-hearing rulings, among others, ERICA moved to compel interviews with Division employees in an attempt to determine whether the memorandum was sent to licensees. Reiterating his ruling that the memorandum was irrelevant on any issue and inadmissible, the hearing officer denied the motion to compel interviews.

{9} At the hearing on ERICA's alleged violations, the hearing officer rejected several attempts by ERICA to present testimony regarding the memorandum and to offer the memorandum into evidence or to include the testimony and the memorandum in the record as an offer of proof, and further stated for the record that he was removing all copies of the memorandum from motions in the record. ERICA argued that the hearing officer's rulings and procedures, along with the minimum statutory notice given to ERICA for a hearing on the alleged violations of Section 60–7B–1(A)(1), and bias of the hearing officer based on the preliminary conclusions of law, all combined to deny ERICA due process of law. The hearing officer rejected ERICA's arguments. ERICA also argued that the procedures used by the De-partment of Public Safety in conducting the minor sting operations were unfair and violated due process. The hearing officer rejected this argument as well.

{10} After the hearing, the hearing officer ultimately concluded that ERICA violated Section 60–7B–1(A)(1) by selling alcohol to a minor on each occasion. The district court affirmed the hearing officer's decision. ERICA appeals primarily on three grounds: (1) the hearing officer incorrectly interpreted and precluded ERICA from developing a good faith defense under Section 60–7B–6; (2) there were several due process violations which, as a whole, denied ERICA a fair hearing; and (3) ERICA was denied substantive due process by entrapment. ERICA also raises issues regarding attorney fees and substantial evidence, which we briefly address.

## DISCUSSION

{11} "[W]e review [an] administrative decision under the same standard of review used by the district court while also determining whether the district court erred in its review." *Paule v. Santa Fe Bd. of County Comm'rs*, 2005–NMSC–021, ¶ 26, 138 N.M. 82, 117 P.3d 240. We review the hearing officer's decision "to determine if it is arbitrary, capricious, or an abuse of discretion; not supported by substantial evidence in the record; or, otherwise not in accordance with law." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007–NMSC–053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

> Although we are not bound by an agency's interpretation of statutes and rules because it is the function of the courts to interpret the law, we afford administrative agencies considerable discretion to carry out the purposes of their enabling legislation, and we give deference to an agency's interpretation of its own regulations.

*Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n*, 2006–NMCA–115, ¶ 25, 140 N.M. 464, 143 P.3d 502 (internal quotation marks and citations omitted).

However, "we grant less deference when reviewing determinations outside the realm of the [agency's] expertise." *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n,* 1999–NMSC–040, ¶ 12, 128 N.M. 309, 992 P.2d 860 (internal quotation marks and citation omitted).

## I. The Good Faith Defense Is Not Precluded as a Matter of Law

{12} Regarding the sale of alcoholic beverages by Ms. Montes to Sarah T., ERICA argues that the defense of demanding, in good faith, and seeing an identity card applies. Section 60–7B–1(A)(1) defines the violation as follows:

It is a violation of the Liquor Control Act ... for a person, including a person licensed pursuant to the provisions of the Liquor Control Act, or an employee, agent or lessee of that person, *if he knows or has reason to know* that he is violating the provisions of this section, to ... sell, serve or give alcoholic beverages to a minor[.]

(Emphasis added.) However, a defense is provided under Section 60–7B–6 as follows:

[I]n any proceedings for the suspension or revocation of a license ... proof that the accused licensee *in good faith* demanded and was shown an identity card before furnishing any alcoholic beverages to a minor shall be a defense to the prosecution or proceedings.

(Emphasis added.) The Division has promulgated a rule pertinent to this defense.

DEFENSE TO SALE TO A MINOR: If the licensee can establish all of the following, it shall be a valid defense to the administrative charge of a sale to a minor:

A. the purchaser falsely represented his or her age by producing, at the time of the alleged illegal sale, a photo identification card which appears to have been issued by a federal, state, county or municipal government, or sub department or agency thereof, and which shows the purchaser to be [twenty-one] years of age or older; and

B. the purchaser appeared to be [twenty-one] years of age or older; and

C. the seller reasonably relied on the false identification presented and on the purchaser's appearance, thereby believing the purchaser to be [twenty-one] years of age or older.

15 NMAC 10.33.12 (2006).

## A. The Hearing Officer's Limitation of the Defense to the Use of Fraudulent Identification

■ {13} ERICA argued that the defense of demanding identification, in good faith, applied to this case based on Ms. Montes' demand for identification and her reliance on the appearance of the license, among other circumstances, even though Ms. Montes did not calculate Sarah T.'s age. This position is clear from ERICA's arguments relating to both Sections 60–7B–1 and –6. The hearing officer disagreed and refused, as a matter of law, to consider Section 60–7B–6 as a defense, and stated that Section 60–7B–6 provides a defense only when the licensee is shown fraudulent identification. The hearing officer based this interpretation of the statute on several grounds. The hearing officer relied on 15 NMAC 10.33.12 as well as the fact that Section 60–7B–6 is surrounded by other provisions in the Liquor Control Act relating to identification which, according to the hearing officer, "when taken together, show a statutory scheme designed, by the [L]egislature, to absolve a sales clerk who views and relies upon an official looking ID that is fraudulent." *See* NMSA 1978, § 60–7B–5 (1993) (stating that a licensee "shall refuse to sell or serve alcoholic beverages to any person who is unable to produce an identity card as evidence that he is twenty-one years of age or over"); NMSA 1978, § 60–7B–7 (1993) (stating that it is a misdemeanor for a minor to present false identification for the purpose of obtaining alcohol); NMSA 1978, § 60–7B–8 (1991) (stating that it is a petty misdemeanor for a person to supply a minor with identification when the person knows the minor will attempt to use the identification to obtain alcohol). Further, the hearing officer was not persuaded by ERICA's proffered interpretation of the statute, stating that it would:

permit the absurd result in this case that, even though Ms. Montes looked at a driver[']s license clearly indicating [Sarah T.]

was a minor, she would be absolved of violating the sale-to-minor proscription simply because she demanded and was shown an ID, without being held accountable for knowledge of the contents thereof. . . . The statutory scheme clearly places a responsibility on the sales clerk to look at the ID and determine whether the purchaser is of legal age. Ms. Montes' viewing of [Sarah T.'s] driver[']s license gave her actual notice of the minority of [Sarah T.].

(Citation omitted.)

{14} As to Section 66–5–47, which requires that the driver's license of a minor indicate that he or she is under twenty-one, the hearing officer viewed ERICA's reliance on the statute as an attack on the validity of the license in question and ruled pretrial that the statute was "neither relevant to nor probative with respect to the issues presented in this case and, therefore, no evidence or testimony would be admitted into the record relative to that section." In regard to the knowledge requirement in Section 60–7B–1, the hearing officer explained that Section 60–7B–2 allows various forms of identification to be used to purchase alcoholic beverages, and "[w]hen a clerk views a driver[']s license or any other document, government or otherwise, that shows a prospective purchaser's birth date is less than [twenty-one] years prior to the date of the attempted purchase, that clerk has actual notice of the purchaser's minority." The hearing officer further stated that "actual notice gives the clerk the 'reason to know' that satisfies the knowledge element of the statute." Thus, as a matter of statutory interpretation, the hearing officer rejected all of ERICA's defense arguments and concluded that the knowledge requirement of Section 60–7B–1 was satisfied.

{15} On appeal, ERICA argues that the hearing officer improperly read the word "fraudulent" into the statute. Further, ERICA argues that Section 60–7B–6 only states that the seller must demand to see a license in "good faith" and that the ordinary meaning of "good faith" should be employed. *See Whitely v. N.M. State Pers. Bd.*, 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993) ("The words of a statute, including terms not statu-

torily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary."). ERICA argues that several circumstances might fall under the good faith defense, including that the clerk incorrectly computed the minor's age, that the Motor Vehicle Department put the wrong birth date on the driver's license, or, as in this case, that the license did not have language on it stating that the minor was under twenty-one until a certain date. ERICA points out that Section 66–5–47(A)(2) requires that all drivers' licenses for minors "shall have a printed legend, indicating that the person is under twenty-one, which shall be displayed in such manner as to be easily read by any person inspecting the license." ERICA thus argues that to allow the good faith defense only when the minor presents a false identification is not consistent with the ordinary meaning of a good faith defense.

{16} We hold that the hearing officer's construction of Section 60–7B–6 was erroneous. The hearing officer thereby erred in refusing as a matter of law to consider ERICA's defense that Ms. Montes "in good faith" demanded to see identification before selling alcohol to a minor. In so concluding, we also hold that the hearing officer erred in reading 15 NMAC 10.33.12 as precluding any good faith defense under Section 60–7B–6 other than under circumstances of being shown fraudulent identification.

{17} Ultimately, the best indicator of legislative intent is the plain language of a statute. *See, e.g., Pub. Serv. Co. of N.M.*, 1999–NMSC–040, ¶ 18, 128 N.M. 309, 992 P.2d 860 ("The plain language of a statute is the primary indicator of legislative intent." (alteration omitted) (internal quotation marks and citation omitted)); *Phelps Dodge Tyrone*, 2006–NMCA–115, ¶ 15, 140 N.M. 464, 143 P.3d 502 (same). We agree with ERICA that we are to apply the ordinary meaning of words in a statute unless the Legislature indicates otherwise, and that we "will not read into a statute . . . language which is not there, particularly if it makes sense as written." *Pub. Serv. Co. of N.M.*, 1999–NMSC–040, ¶ 18, 128 N.M. 309, 992 P.2d 860 (internal quotation marks and citation omitted).

{18} We are not persuaded by the Division's argument that Section 60–7B–6 only allows the good faith defense when a licensee is shown fraudulent identification because Section 60–7B–6 is followed by two provisions which address false identification. The location of the section does not speak as loudly as the plain language of the section. The Legislature did not require, or even mention, in Section 60–7B–6, that the identification be fraudulent. Rather, the Legislature focused only on whether the licensee "in good faith" demanded and was shown identification. That the Legislature chose the words "in good faith" rather than the word "fraudulent" indicates an intention to allow a defense under a broader range of circumstances than simply those where a licensee is shown fraudulent identification. Good faith is a broad term: "The phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context." *Black's Law Dictionary* 701 (7th ed.1999) (internal quotation marks and citation omitted) (defining good faith as "A state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage"). Given that the Legislature chose to use the more broad and malleable language of "good faith," as opposed to hinging the defense on being shown a "fraudulent" identification, we conclude that the Legislature intended to allow a defense in more circumstances than simply those where a fraudulent identification is used.

{19} As ERICA argues, Section 66–5–47 further supports a conclusion that the defense under Section 60–7B–6 is not narrowly circumscribed to fraudulent identifications. As a preface, we note that ERICA does not argue before us that Sarah T.'s license was invalid because it did not comply with Section 66–5–47, and we do not read ERICA's arguments below as limited to such a contention. Section 66–5–47(A)(2) states that the Motor Vehicle Department:

> shall reproduce the likeness of drivers, subject to the following conditions:

. . .

> (2) photographs or other reproductions of the likeness of all persons under the age of twenty-one years shall have a printed legend, indicating that the person is under twenty-one, which shall be displayed in such manner as to be easily read by any person inspecting the license.

This language has been in Section 66–5–47 since 1978, which was three years before Section 60–7B–6 was first enacted. *See* 1978 N.M. Laws ch. 35, § 269; 1981 N.M. Laws ch. 39, § 86. We agree with ERICA that the legislative intent behind Section 66–5–47(A)(2) was to make it easier to distinguish minors from adults. The statute affirmatively requires such a license to "have a printed legend[ ] indicating that the person is under twenty-one, which shall be displayed in such manner as to be easily read by any person inspecting the license." § 66–5–47(A)(2). Thus, when presented with the driver's license of a minor that does not comply with Section 66–5–47(A)(2) by indicating that the minor is under twenty-one, we cannot say that reliance on the lack of a printed legend on the driver's license is unreasonable or not in good faith as a matter of law. This is an issue that, instead, depends on the surrounding circumstances. The hearing officer expressed concern with reading Section 66–5–47 to allow some basis for a defense, in part because Section 60–7B–2 allows various forms of identification, "including but not limited to a motor vehicle operator's license," and those other forms of identification do not have to indicate that the holder is under twenty-one. However, when the Legislature has mandated that one such form of identification, and certainly the most commonly produced form of identification, must have a printed legend indicating that the holder is under twenty-one, we cannot say that, as a matter of law, it would in all circumstances be unreasonable to rely on the absence of that language in determining whether the license holder is a minor.

### B.   15 NMAC 10.33.12

■ {20} The hearing officer in this case read 15 NMAC 10.33.12 to allow the good faith defense of Section 60–7B–6 only under the circumstances expressed by the rule, that

is, when the identification presented to the licensee is fraudulent. While we grant deference to an agency's interpretations of the rules and statutes which it administers, we "will overturn a clearly incorrect administrative interpretation." *N.M. Pharm. Ass'n v. State,* 106 N.M. 73, 75, 738 P.2d 1318, 1320 (1987). Under our interpretation of Section 60–7B–6, as explained earlier in this opinion, it is incorrect to allow a defense only where the identification is fraudulent. Thus, 15 NMAC 10.33.12 should not be construed as defining the only circumstances in which a good faith defense under Section 60–7B–6 may be developed.

## C. Whether the Defense Is Precluded as a Matter of Law by the Language of Section 60–7B–1

{21} The language of Section 60–7B–1 does not alter our construction of Section 60–7B–6. Section 60–7B–1(A) states that it is a violation of the Liquor Control Act to sell alcohol to a minor when the licensee or licensee's agent "knows or has reason to know" that he or she is violating the provisions of Section 60–7B–1. § 60–7B–1(A). In oral argument before this Court, the Division argued that, despite the lack of a printed legend indicating she was under twenty-one on Sarah T.'s license, the appearance of such a legend is only one of three ways of imparting knowledge that the license holder is a minor. The Division identified the three ways as the legend, the date of birth, and the vertical orientation of the license. Thus, the Division argues on appeal that Ms. Montes had one reason to know that Sarah T. was a minor, because Sarah T.'s birth date was on the license, and had Ms. Montes calculated Sarah T.'s age, she would have known that Sarah T. was a minor.

{22} Thus, we are presented with the question of whether the Legislature intended to allow a licensee to establish the defense in Section 60–7B–6 where the driver's license of a minor presents contradictory indicators of age, but gives at least one "reason to know" that the license holder is a minor. We cannot, as the Division implicitly suggests we do, simply ignore the presence of Section 60–7B–6 in our statutes, which contains a legislative-

ly created good faith defense. We hold that the good faith defense is not precluded as a matter of law under these circumstances. An obvious and certainly an easy and quick way to determine whether a driver's license holder is a minor, is to determine whether the statutorily required printed legend is on the license. Given Section 66–5–47(A)(2), we cannot say as a matter of law that the Legislature intended to require a birth-date based age calculation in every case. The legislative intent behind Section 66–5–47(A)(2) is to obviate the necessity of performing such calculations. Thus, when the statutorily mandated, obvious indicator that a person is a minor is absent from a New Mexico driver's license, we cannot say as a matter of law that the Legislature intended to preclude reliance on the statutory defense allowed by Section 60–7B–6.

{23} We emphasize, however, that we are only addressing the question whether a licensee is barred as a matter of law from presenting a good faith defense where the date of birth appears on a driver's license not otherwise denoting the bearer's minority. We are not addressing whether, as a question of fact, a licensee will succeed on a good faith defense when the licensee is presented with the driver's license of a minor which does not obviously indicate that the minor is under twenty-one but a birth date calculation would reveal that the driver's license holder is a minor. "Questions of good faith belief . . . are questions of fact." *State v. Vandenberg,* 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (alteration omitted) (omission in original) (internal quotation marks and citation omitted). Thus, even where a minor presents a driver's license lacking the legend required by Section 66–5–47(A)(2), if other circumstances should put a licensee on notice that the person attempting to purchase alcohol may be a minor, where a good faith defense is asserted, the fact finder is free to decide whether the licensee did not act in good faith by failing to calculate the person's age.

## D. The Question of Prejudicial Error

{24} "On appeal, error will not be corrected if it will not change the result." *In*

re *Estate of Heeter,* 113 N.M. 691, 695, 831 P.2d 990, 994 (Ct.App.1992). While the hearing officer erred, as a matter of law, in too narrowly construing the good faith defense under Section 60–7B–6, the question remains whether the result of this case would be different if the hearing officer were to correctly apply the good faith defense. There is no testimony in this case that Ms. Montes knew that a legend indicating that a minor is under twenty-one should appear on a minor's driver's license. Ms. Montes testified that she remembered that Sarah T.'s identification was horizontal, whereas she had noticed that her husband's underage cousin's license was vertical. The pertinent questions and answers regarding the sale are as follows.

Q: Do you remember making the sale to Sarah [T.]?

A: Yes, I do.

Q: Did you know that she was under twenty-one when you made the sale?

A: No, I didn't.

Q: Did you have any intention to make a sale to someone under twenty-one?

A: No, no.

Q: What was your intention?

A: Why I figured at that time, yes she did look different, she had straight hair, the ends were curled, she was wearing light blue faded jeans and a light blue sweater kind of deal, I guess. Her and her friend walked in, I saw them, whatever. When I carded her, I looked at her picture, it looked fine to me, everything looked good, and I sold her the alcohol.

Q. What do you remember about the identification?

A: On her ID, the ID wasn't like, it's horizontal, and I noticed that like, my husband's cousin's ID, she's not twenty-one and hers is vertical, that way.

Q. That's right?

A. Right, so I figured that as soon as, that's the way that people here distinguish people under age, difference in licenses, I think that, I mean, if she would have had the proper ID, I would not have sold her [inaudible].

Either way I would not have sold her the alcohol.

Q: Did you see any specific language on it about her being under twenty-one?

A: No.

Q: Did you ask for her identification so you could determine whether she was twenty-one or not?

A: Yes, I did.

Q: And would you have made the sale if you had realized that she was under twenty-one?

A: No,....

Q: So did you, so were you in good faith asking her for proof of her age?

A: Yes, I was.

Ms. Montes also testified that Sarah T. looked like she was twenty-one. There was some testimony at various points during the administrative hearing about the license of a minor being vertically oriented, thereby, obviously different than the license of an adult, but there is no indication as to why this license was not vertical or why some licenses of minors may not be vertical.

{25} Despite the lack of evidence, we cannot conclude that a new hearing under the proper standard of law would not change the results in this case for two reasons. First, the hearing officer made no factual determinations as to whether Ms. Montes acted in good faith. The hearing officer should consider Ms. Montes' testimony and all of the circumstances and determine whether it is a sufficient basis for a finding that Ms. Montes in good faith demanded, was shown, and examined Sarah T.'s identification. Second, and moreover, we are unable to ascertain whether the hearing officer's narrow interpretation of Section 60–7B–6 had the effect of limiting ERICA's presentation of evidence of good faith. Thus, additional evidence on the issue of good faith could change the result of this case, in which case the error is prejudicial. *See Estate of Heeter,* 113 N.M. at 695, 831 P.2d at 994. On remand, the hearing officer should consider all evidence ERICA presented and was precluded from presenting on the issue of good faith, and then decide whether the evidence presented was sufficient to prove that Ms. Montes "in

good faith demanded and was shown an identity card" before selling alcohol to Sarah T. § 60–7B–6.

## II. The Procedural Due Process Arguments

{26} ERICA argues on appeal that its due process rights under the Fourteenth Amendment of the United States Constitution and Article II, Section 18 of the New Mexico Constitution were violated for several reasons, the first and foremost being the refusal of the hearing officer to allow ERICA to introduce into evidence the Division's 1994 memorandum and testimony about the memorandum.

■■■ {27} ERICA does not argue that the New Mexico Constitution provides broader due process protection than the federal constitution; thus we analyze whether the federal due process requirements have been met under the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893; *see also City of Albuquerque v. Chavez*, 1998–NMSC–033, ¶¶ 12–14, 125 N.M. 809, 965 P.2d 928 (focusing on the *Mathews* due process test where the petitioner did not argue that the state constitution granted broader due process protections).

{28} Our Supreme Court has, though briefly, addressed the first *Mathews* factor, the private interest at stake in a liquor license. *See Chronis v. State ex rel. Rodriguez*, 100 N.M. 342, 346–47, 670 P.2d 953, 957–58 (1983) (holding that a statutory summary license suspension provision without

notice or a hearing was a violation of due process). The Court in *Chronis* held that "liquor license holders have no property right in their license as against the State," further stating that "a liquor license is a privilege subject to regulation and not a property right." *Id.* at 345, 670 P.2d at 956. Nonetheless, the Court held that:

it is the policy of our law that a person should not be deprived even of a permit to engage in a legitimate business without a fair and impartial hearing and without an opportunity to present competent evidence for consideration by the licensing authority in opposition to the proposed revocation of his permit.

*Id.* at 346–47, 670 P.2d at 957–58 (internal quotation marks and citation omitted). Though ERICA makes several arguments as to the valuable nature of a liquor license, we are bound by the precedent established by our Supreme Court and, thus, we will not, in this case, go beyond the holding in *Chronis* in defining the nature of the private interest at issue. In this case, we will, however, assume that ERICA has a sufficient interest to raise due process violations.

{29} The second and third *Mathews* factors require us to balance the risk of an erroneous deprivation based on the procedures used against the burden on the Division in following the additional procedures requested. *See* 424 U.S. at 335, 96 S.Ct. 893. We analyze these factors in relation to each of the procedures that ERICA attacks.

## A. The Memorandum and the Offer of Proof

■■■ {30} The first procedure ERICA attacks is the hearing officer's refusal to allow the memorandum into evidence, as well as his refusal to allow ERICA to make an offer of proof showing the relevance of the memorandum. Prior to the administrative hearing, the hearing officer, based largely on his personal knowledge and experience, concluded that the memorandum was not relevant to the proceedings because it had no probative value for determining whether licensee sold an alcoholic beverage to a person under twenty-one and whether licensee knew or had reason to know that it was selling an

alcoholic beverage to a person under twenty-one in violation of Section 60–7B–1(A)(1). The hearing officer stated that these were the only issues relevant to the charges.

{31} During the hearing, the hearing officer consistently refused requests that the memorandum and testimony about it be accepted in evidence and also refused offers of proof regarding the memorandum. ERICA complains of this procedure, arguing that the memorandum was relevant to license suspension proceedings and that the parties had not even addressed relevance at the time the ruling was issued. ERICA also complains that its witnesses were not allowed to testify about the memorandum and that it was unable to make an offer of proof of what the witnesses would have said about the memorandum.

{32} The sole basis for ERICA's contention of relevancy with respect to the content of the memorandum and its receipt by licensees is that the memorandum was:

relevant to whether Ms. Montes could reasonably have had expectations similar to the former liquor director. The [memorandum] would also have been relevant to the good faith defense of the [Liquor Control Act] which provides a defense for any sale to a minor which is made after requesting and reviewing an identity card in good faith. If a former liquor director expected to see special language on a driver's license, it could be reasonable for a store clerk to act on the same assumption and thus act in good faith.

(Citation omitted.) We fail to see how the memorandum or any testimony about it was relevant in this case to the issues of Ms. Montes' expectation, awareness, or knowledge, or good faith. Nor do we see how ERICA has shown that analysis of the second and third *Mathews* factors require us to conclude that a due process violation occurred in regard to the hearing officer's rulings. ERICA sought to prove that the 1994 director of the Division issued to licensees a memorandum stating something to the effect that minors' driver's licenses should contain a printed legend. Presumably, this would show that the director considered Section 66–5–47 to have been applicable to driver's licenses presented to store clerks, contrary to the hearing officer's ruling that Section 66–5–47 was not relevant with respect to any issue in the case.

{33} However, glaringly absent from this contention of relevancy is any indication that Ms. Montes was ever aware of Section 66–5–47, of the existence or content of the memorandum, of any requirement that a printed legend appear on a minor's driver's license, or that she could expect any such legend to appear on a minor's driver's license. ERICA presented no evidence and failed to attempt an offer of proof showing that ERICA personnel imparted any such information to Ms. Montes. It is therefore reasonable to conclude that ERICA did not have any such evidence to present on the issues of Ms. Montes' expectation, awareness, knowledge, or good faith.

{34} Furthermore, we see no indication in the record of a hearing officer ruling that forbade ERICA from attempting to make an offer of proof in regard to Ms. Montes' expectation, awareness, or knowledge of any printed legend requirement. We are aware that the hearing officer in effect precluded evidence of good faith by ruling that only evidence of a fraudulent identification could satisfy the good faith defense, but neither that ruling, nor the ruling refusing an offer of proof as to the content of the memorandum, precluded ERICA from making or attempting to make an offer of proof showing Ms. Montes' expectation, awareness, or knowledge, if any, of a printed legend requirement. On appeal, ERICA does not represent that any such evidence was precluded.

{35} In addition, there exists no logical or rational connection between the Division's former director's knowledge, understanding, and expectations, and those of Ms. Montes, as ERICA seems to attempt to create. We hold that the hearing officer did not err in determining that the memorandum and its contents were irrelevant on the issues of Ms. Montes' expectation, awareness, knowledge, and good faith. Therefore, the hearing officer did not err in refusing to allow it into evidence, or in disallowing an offer of proof as to the content and receipt of it by licensees.

{36} We think it is important to add a note about the hearing officer's refusals to allow offers of proof, including the court's action in striking the memorandum from the record. It does not appear to us that the hearing officer expressed any valid basis for refusing ERICA's offers of proof or for striking the memorandum from the record. That the memorandum had no relevance was not a sufficient basis for those actions. It is black letter law that, generally, where a party's proffered evidence is denied on the ground of relevance, the party has a right to make an offer of proof in order to show this Court on appeal what the content of the evidence was as well as testimony in regard to the evidence that would bear on relevance. *See Nichols Corp. v. Bill Stuckman Constr., Inc.,* 105 N.M. 37, 39, 728 P.2d 447, 449 (1986) ("An offer of proof is essential to preserve error where evidence has been excluded."); *State v. Shaw,* 90 N.M. 540, 542, 565 P.2d 1057, 1059 (Ct.App.1977) ("The right to offer proof is almost absolute."). We see no basis on which to relax this rule where administrative proceedings, rather than district court proceedings, are involved.

{37} What is particularly disturbing about the hearing officer's actions is his removal of all evidence of the memorandum itself from the record, thus making the memorandum unavailable for our review on appeal, while at the same time himself announcing as a basis for his rulings that the memorandum "appears to be in the nature of an informational newsletter and, when viewed in light of [Section] 60–3A–6, [cannot] serve as a policy statement by [ERICA] relating to conduct of enforcement activities carried out by DPS agents under the Liquor Control Act." A hearing officer cannot have it both ways: relying on what a document purports to say or be, yet removing it entirely from the record.

{38} In regard to procedural due process, however, we see no prejudice to ERICA from the denial of the offers of proof and the action striking the memorandum from the record. But on the issue of substantive due process and entrapment, we do see prejudice. Insofar as procedural due process is concerned, we have no reason to think that our review of the memorandum on appeal or of the testimony ERICA sought to present in relation to the memorandum would have made any difference on the issue of Ms. Montes' expectation, awareness, knowledge, or good faith. ERICA does not represent that it did not know what was in the memorandum. The memorandum was, in fact, in the record, and it seems clear that ERICA knew the contents of the memorandum. We do not need to review it, and can rely on what is in the briefs. We will assume, as ERICA states, that the memorandum consisted of some sort of a directive or instruction, that it was sent to licensees, and that it stated that licensees and their employees could expect to see an under twenty-one legend on minors' driver's licenses as required by law. Even with that before us, we do not see how the memorandum and the testimony ERICA sought to present were relevant, absent some evidence that Ms. Montes knew of the memorandum or of its contents.

{39} However, on the issue of substantive due process and entrapment, which we discuss later in this opinion, we can see a basis on which ERICA would have wanted to argue that the officers should have been aware not only of the statutory under twenty-one legend requirement but that the Division considered Section 66–5–47 to have been applicable to driver's licenses presented to liquor store clerks. ERICA argues that, "[t]o be fair, any sting operation should have, at the least, used a minor whose identification complied with state law [under Section 66–5–47]," thus requiring the officers to assure that the minors they used in sting operations presented state-required identifications so that clerks with no disposition to sell to minors would have the opportunity to refrain from doing so or otherwise attempt to prove that they acted in good faith under Section 60–7B–6. We note that the hearing officer concluded that the memorandum could not be of any relevance as a Division policy, citing the exclusive authority of the Department of Public Safety under NMSA 1978, § 60–3A–6 (2001) to establish policy relating to identification issues in enforcement activities. Nevertheless, it is ultimately up to this Court to evaluate the hearing officer's find-

ings and legal determinations. Accordingly, we hold that the hearing officer cannot rule on the factual and legal issues and at the same time both deny offers of proof and strike from the record the evidence on which his determinations are made.

## B. Pre–Hearing Interviews

{40} ERICA's next complaint is that its inability to obtain any information about the memorandum from the Division through pre-hearing interviews was a denial of due process. ERICA sought these interviews because the Division had stated in its pre-hearing motion in opposition to issuing the subpoena duces tecum for the memorandum that the Division's employees could not remember whether the memorandum was distributed to licensees. The hearing officer refused to compel interviews, indicating that there is no provision in the law for informal interviews and that the proper procedure would have been for ERICA to request depositions. We agree with the hearing officer. Pursuant to NMSA 1978, § 60–6C–5 (1993), hearing officers have the authority to cause depositions to be taken. A formal procedure was already available to ERICA and it did not take advantage of that procedure. Thus, we cannot say that, constitutionally, there was a denial of due process based on the hearing officer's refusal to grant pre-hearing interviews. *See generally Dente v. State Taxation & Revenue Dep't,* 1997–NMCA–099, ¶¶ 4–10, 124 N.M. 93, 946 P.2d 1104 (discussing due process rights to depositions and pretrial discovery in administrative hearings), *overruled on other grounds by State Taxation & Revenue Dep't v. Bargas,* 2000–NMCA–103, ¶ 15, 129 N.M. 800, 14 P.3d 538. Furthermore, as we discussed earlier in this opinion, general evidence in regard to the content and issuance of the memorandum was properly excluded by the hearing officer as irrelevant to the issues.

## C. Minimum Statutory Notice

{41} Next, ERICA complains that the pre-hearing matters were completed in haste and without consideration because pre-hearing notice was given fourteen days prior to the hearing, the minimum required by the Liquor Control Act. We disagree with ERICA that there was insufficient time for it to counter the hearing officer's pre-hearing rulings on various matters. ERICA challenged those pre-hearing rulings and the hearing officer rejected ERICA's arguments. Further, there is no indication in the record that, with additional time, the hearing officer would have reached a different decision on ERICA's arguments. Specifically, the hearing officer rejected ERICA's arguments on grounds such as relevance and the procedural scheme of the Liquor Control Act. Further, ERICA has not demonstrated that, with additional time, the hearing officer would have reached different legal conclusions and thus more time would have reduced the risk of an erroneous deprivation. *See State ex rel. Children, Youth & Families Dep't v. Browind C.,* 2007–NMCA–023, ¶¶ 36–38, 46, 141 N.M. 166, 152 P.3d 153 (concluding that the appellant had not shown that additional procedures would have reduced the risk of an erroneous deprivation and thus there was no due process violation). Thus, we see no deprivation of due process given the notice period in this case.

## D. Bias of the Hearing Officer

{42} Finally, we also reject ERICA's argument that its due process rights were violated because the hearing officer was biased. ERICA argues that the hearing officer was biased because he works in the same building with Division employees and develops friendships with Division employees, and thus cannot meet the standards of fairness and impartiality required by due process. ERICA points to the pre-hearing rulings and rulings during the hearing as an indication of bias.

{43} A fair and impartial administrative hearing requires, at a minimum: that the trier of fact be disinterested and free from any form of bias or predisposition regarding the outcome of the case. In addition, our system of justice requires that the appearance of complete fairness be present. The inquiry is not whether the [hearing officer is] actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a

possible temptation to an average man sitting as a judge to try the case with bias for or against any issue presented to him. *Colonias Dev. Council v. Rhino Envtl. Servs., Inc.*, 2003–NMCA–141, ¶ 35, 134 N.M. 637, 81 P.3d 580 (internal quotation marks and citation omitted), *rev'd on other grounds*, 2005–NMSC–024, 138 N.M. 133, 117 P.3d 939. In *Phelps Dodge Tyrone*, 2006–NMCA–115, ¶¶ 41–42, 140 N.M. 464, 143 P.3d 502, this Court was not persuaded that the petitioner had demonstrated bias where one of three Governor-appointed commissioners had previously participated in a hearing as a representative of an organization with an opposing view point to that of the petitioner. We noted that based on the nature of the way that appointments to the commission were made, it was unrealistic to expect members of the commission to have a "clean slate." *Id.* ¶ 42 (internal quotation marks and citation omitted). Thus, the allegation of bias based on previous statements of philosophy were not enough to show bias on the part of the commissioner in question. *Id.* Recognizing that *Phelps Dodge Tyrone* involved a gubernatorial appointment to a three-member commission, whereas the present case involves a Division hearing officer, we nevertheless believe that there is less reason to find bias in the case before us than there was in *Phelps Dodge Tyrone*, where the hearing officer merely works in the same building as Division employees and may have developed friendships with some of them. Thus, without further demonstration of bias based on the proximity of the working environment, we will not find prejudice. Further, the pre-hearing rulings do not indicate a prejudgment of the case, as in *Reid v. New Mexico Board of Examiners in Optometry*, 92 N.M. 414, 415, 589 P.2d 198, 199 (1979), as ERICA argues. Rather, the parties had filed motions and responses, and the hearing officer was ruling on those motions prior to the administrative hearing, as the motions contemplated pre-hearing rulings on subpoenas and interviews. The hearing officer's rulings were based on legal conclusions, rather than factual predetermination. In *Reid*, the board member had prejudged the merits of the case, indicating that the licensee would lose his license without having heard any evidence

or testimony on the matter. *Id.* This case is distinguishable from *Reid*. We conclude that ERICA has not demonstrated bias and there was no violation of due process on this ground.

## E. Sting Operation and Entrapment

{44} Within its due process arguments, ERICA advances the defense of objective entrapment with regard to both of the minor sting operations. ERICA argues that the DPS officers exceeded the bounds of proper investigation and created a substantial risk that a crime would be committed by an ordinary person, not predisposed to committing a crime. *See State v. Vallejos*, 1997–NMSC–040, ¶¶ 4–5, 15–32, 123 N.M. 739, 945 P.2d 957 (analyzing the types and elements of entrapment and holding that "all forms of entrapment constitute violations of due process" under Article II, Section 18 of the New Mexico Constitution, and discussing the concept of entrapment in the context of substantive due process).

{45} In addition, ERICA argues that a sting operation must meet the substantive due process requirements of *Vallejos*. Based on the concepts of objective entrapment and due process, ERICA argues that the officers exceeded the bounds of proper investigation and created a substantial risk that a crime would be committed by an ordinary person who was not predisposed to committing a crime. *See Vallejos*, 1997–NMSC–040, ¶ 11, 123 N.M. 739, 945 P.2d 957 ("[I]f a jury finds as a matter of fact that police conduct created a substantial risk that an ordinary person not predisposed to commit a particular crime would have been caused to commit that crime, *or* if the trial court rules as a matter of law that police conduct exceeded the standards of proper investigation, then criminal charges should be dismissed.").

{46} Further, according to ERICA "[a] minor sting operation is effective at apprehending those who provide liquor to minors only if it is designed for situations where there is reason to believe that an establishment is providing liquor to minors." Because Ms. Montes was not predisposed to commit a crime, ERICA argues, she should

have been given every opportunity to decline the sale and thus avoid the crime; rather, the officers made no effort to use a minor who had a license that complied with the state law requiring the under twenty-one language on the identification. In addition, ERICA complains that the officers used a license that did not have the correct shape. ERICA also argues entrapment during the sale of alcohol by Ms. Snow based on the fact that Deputy Pena testified that he wore a hat during the sale, and ERICA argues that the hat could have created a shadow or otherwise have made it difficult for the clerk to discern the age of the minor.

{47} The hearing officer found that "the minor sting operations ... were conducted fairly in all respects as required by law." As to the "Conduct of DPS sting operations," he stated:

> Lessee requested a finding that the DPS sting operations were not conducted fairly, however, there is no evidence in the record supporting such a finding. To the contrary there is very persuasive and detailed evidence, contained in the testimony of the police officers about the conduct of these stings, and about the DPS procedures and their design intending to produce fairness to the lessee. Based on the record in this proceeding, any finding other than that the sting operations were conducted fairly would be out of order. For this reason, the requested finding will not be entered.

The Division argues that entrapment did not occur and also that the defense of entrapment is not available in a civil liquor license suspension or revocation proceeding according to *Kearns v. Aragon,* 65 N.M. 119, 123–24, 333 P.2d 607, 610 (1958). In addition, the Division posits that an entrapment defense should be unavailable barring "extreme cases of governmental misconduct" because of the non-criminal nature the proceedings and "the public safety purpose of the compliance checks."

{48} In *Kearns,* two state police officers purchased alcohol from a liquor licensee on Sunday, which, at that time, was prohibited by statute. *Id.* at 120, 333 P.2d at 608. The defendant raised the defense of entrapment and the Court "assum[ed] that the action of the [s]tate police officers constituted entrapment." *Id.* at 122–23, 333 P.2d at 609. However, based on differences between an administrative proceeding to revoke a liquor license, where the aim is to "insure so far as possible the decent and orderly conduct of a business affecting the public health, morals, safety and welfare," and criminal proceedings that are aimed at punishing offenders, our Supreme Court held that the same defenses available to criminal defendants were not available in the administrative proceeding. *Id.* at 123, 333 P.2d at 610. The Court specifically stated that "entrapment is not a defense in an administrative proceeding to revoke a liquor license." *Id.* at 124, 333 P.2d at 610.

{49} The refusal to allow a defense of entrapment in license suspension and revocation proceedings has been criticized. *See Patty v. Bd. of Med. Exam'rs,* 9 Cal.3d 356, 107 Cal.Rptr. 473, 508 P.2d 1121, 1125–29 (1973) (en banc) (distinguishing *Kearns*). *Patty* cites several cases considering the defense of entrapment in liquor license and other license revocation and suspension proceedings. *Id.* at 1125 n. 3. Moreover, the *Patty* court held that the same rationales behind allowing a defense of entrapment in the criminal context were applicable to the license revocation process. *Id.* at 1126. The *Patty* court considered those rationales to be "[s]ound public policy" and "good morals," indicating that "it is contrary to law and public policy for an officer or member of an administrative board to induce the commission of a wrong or a crime for the purpose of securing a pretext to punish it." *Id.* (alteration omitted) (internal quotation marks and citation omitted). Finally, the *Patty* court recognized that in the seminal United States Supreme Court case recognizing the defense of entrapment, the United States Supreme Court indicated that "the roots of the entrapment doctrine lie in civil cases." *Id.* at 1126 n. 6 (citing *Sorrells v. United States,* 287 U.S. 435, 455, 53 S.Ct. 210, 77 L.Ed. 413 (1932)).

{50} It does not escape our attention that *Kearns* was decided in 1958 under a different statute, that is, a statute that did not require intent, and was decided before objective entrapment was adopted in 1987 in

*Baca v. State,* 106 N.M. 338, 742 P.2d 1043 (1987), and before *Vallejos* set out certain attributes of entrapment that were not theretofore clear. Those attributes are: (1) subjective and objective entrapment involve matters of due process under the New Mexico Constitution; (2) "when a defendant asserts the defense of objective entrapment, the factfinder decides whether police conduct created a substantial risk that an ordinary person would have been caused to commit the crime (a factual issue) and that the trial court decides as a matter of law whether police conduct exceeded the standards of proper investigation (a normative issue)" (footnote omitted); (3) either the factual component, or the normative one, will suffice; (4) there are two broad categories of police impropriety, unconscionable methods and illegitimate purposes; and (5) the right involved is that of substantive due process, which "embodies principles of fundamental fairness and entitles every individual to be free from arbitrary or oppressive government conduct." *Vallejos,* 1997–NMSC–040, ¶¶ 2, 10, 11, 17, 31, 123 N.M. 739, 945 P.2d 957.

{51} Both the objective and the subjective standards for entrapment are arguably at issue in this case. The objective standard is raised because ERICA argues that there was police misconduct in this case, and the subjective standard is raised because ERICA argues that its clerks had no intent to sell alcohol to minors. *Baca v. State,* 106 N.M. 338, 339–41, 742 P.2d 1043, 1044–46 (1987) (defining and adopting both the subjective and objective standards of entrapment). The agents' conduct in this case is subject to question. It is arguable that it is inappropriate to use a minor in a sting operation when the agents have reason to know the minor's license appears but for the date of birth to be an adult's license and does not comply with Section 66–5–47. *See Sorrells,* 287 U.S. at 454, 53 S.Ct. 210 ("Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer."). In that regard, it was error for the hearing officer to exclude the memorandum from evidence, strike it from the record,

and rule that ERICA could not present any evidence or testimony in relation to the memorandum or Section 66–5–47. The issue was not, as the hearing officer stated, whether the license presented to a clerk was valid, but whether the officers' conduct in causing or permitting its use in a sting operation was a denial of due process. The subjective standard of entrapment might also be implicated if Ms. Montes could have been induced to violate the Liquor Control Act by the agents' decision to allow use of the particular license, although, to a small degree, the good faith defense allowed in Section 60–7B–6, may allay concerns with subjective entrapment. It also seems arguable that officers should not use minors if they are intentionally dressed or allowed to dress in a manner that makes it difficult to assess approximate age by looking at the customer's face.

{52} ERICA requests that we override *Kearns'* ruling. We are in no position to do so. However, we choose not to apply *Kearns* at this time to rule ERICA's objective entrapment claim barred because the proceeding is an administrative one under the Liquor Control Act. Based on what appears to us to be arguably valid criticism of *Kearns* as well as how the law has developed since *Kearns,* we are unclear how our Supreme Court would now rule on the issue were it to revisit *Kearns.* We think that the best course of action is to require that, on remand of this case to the hearing officer, a full record be developed on the issues of subjective and objective entrapment, including substantive due process, and that the hearing officer enter findings of fact and conclusions of law on subjective and objective entrapment based on the law as set out in *Vallejos.*

### III. Attorney Fees

{53} ERICA requests that we order the Division to pay ERICA's attorney fees on appeal to both the district court and this Court, on the ground that the Division conducted the hearing in bad faith and has taken frivolous positions. We decline to award attorney fees.

{54} In New Mexico, there is a "bad-faith exception to the American Rule

under which parties typically pay their own fees," but "a court may award attorney fees to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Seipert v. Johnson*, 2003–NMCA–119, ¶ 12, 134 N.M. 394, 77 P.3d 298 (internal quotation marks and citation omitted). A court may award attorney fees "against the [s]tate for bad-faith or vexatious litigation." *State ex rel. N.M. Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 7, 896 P.2d 1148, 1154 (1995). This Court, however, does not have inherent power to award appellate attorney fees for a proceeding before an administrative agency or the district court. *See id.* at 6, 896 P.2d at 1153 (holding that "a court's inherent power only extends to conduct occurring before the court or in direct defiance of the court's authority," and not to conduct before a different or lower tribunal). Thus, we deny ERICA's request for attorney fees.

### IV. ERICA's Substantial Evidence Argument

{55} ERICA argues that, looking at all of the evidence on the issue of good faith, substantial evidence supports the conclusion that the sale was made in good faith. ERICA contends that on whole record review of the evidence, we must conclude that Ms. Montes did not have reason to know that Sarah T. was a minor. Were the facts that were presented on the issue of good faith to have been considered and adjudicated by the hearing officer with resulting findings of fact either (1) permitting a conclusion that Ms. Montes did not act in good faith, or (2) that Ms. Montes did act in good faith, we would have a basis on which to review an argument that there was not substantial evidence to support the findings. However, the hearing officer did not consider and adjudicate facts in regard to good faith. Further, ERICA does not approach sufficiency in this manner. It essentially attempts instead to persuade us that we should look at Ms. Montes' testimony, the lack of findings of the hearing officer as to Ms. Montes' intent or purpose, the lack of evidence indicating that Ms. Montes intended to sell to a minor, and the content of the memorandum, and then determine as a matter of law that Ms. Montes acted in good faith.

{56} We reject ERICA's argument. We are remanding to the hearing officer to revisit the issue of good faith. It is up to the hearing officer, not this Court, to evaluate the testimony and documentary evidence and enter findings of fact and conclusions of law in regard to that issue. It is not our duty to review the evidence for the purpose of determining whether ERICA presented sufficient evidence to support its position that Ms. Montes acted in good faith. *See Kaveny v. MDA Enters., Inc.*, 2005–NMCA–118, ¶ 6, 138 N.M. 432, 120 P.3d 854 ("It is for the fact-finder, not the appellate court, to weigh the evidence.").

### CONCLUSION

{57} The hearing officer erred in his interpretation of Section 60–7B–6. Based on that error and the hearing officer's failure to consider evidence relating to good faith, we reverse and remand this proceeding to the hearing officer for a consideration consistent with this opinion as to whether ERICA is excused under Section 60–7B–6 from a violation of Section 60–7B–1(A)(1). The hearing officer also erred in excluding the memorandum and striking it from the record, and in precluding ERICA from presenting evidence and testimony relating to the memorandum and to Section 66–5–47(A)(2). The evidence and testimony were relevant on the entrapment issues and should have been in the record for effective appellate review. We therefore also remand for the hearing officer to develop a full record on the entrapment and substantive due process issues and to enter findings of fact and conclusions of law on these issues.

{58} **IT IS SO ORDERED.**

WE CONCUR: RODERICK T. KENNEDY and MICHAEL E. VIGIL, Judges.